**MAYER BROWN LLP**
ARCHIS A. PARASHARAMI (SBN 321661)
*aparasharami@mayerbrown.com*
575 Market Street, Suite 2500
San Francisco, CA 94105
Telephone: (415) 874-4230

MATTHEW D. INGBER (*pro hac vice*)
*mingber@mayerbrown.com*
ALLISON M. AVIKI (*pro hac vice*)
*aaviki@mayerbrown.com*
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500

DANIEL E. JONES (*pro hac vice*)
*djones@mayerbrown.com*
1999 K Street, N.W.
Washington, DC 20006-1101
Telephone: (202) 263-3000

*Attorneys for Defendant*
*Spotify USA Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC DWAYNE COLLINS a/k/a "RBX", individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPOTIFY USA INC., SPOTIFY TECHNOLOGY S.A., and SPOTIFY AB,<br><br>Defendants. | Case No.: 2:25-cv-10525-JLS<br><br>Hon. Josephine L. Staton<br><br>**DEFENDANT SPOTIFY USA INC.'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>[*Memorandum of Points and Authorities and Proposed Order filed concurrently*]<br><br>Date:        April 17, 2026<br>Time:        10:30 a.m.<br>Courtroom:   8A |

**TO THE CLERK AND ALL COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT,** on Friday, April 17, 2026, at 10:30 a.m., or as soon thereafter as this Motion may be heard, in Courtroom 8A of this Court, located at 350 West First Street, Los Angeles, California 90012, before the Honorable Josephine L. Staton, Defendant Spotify USA Inc. ("Defendant" or "Spotify") will and hereby does move the Court under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim.

This motion is based on this Notice of Motion and Motion to Dismiss, the Memorandum of Points and Authorities, and all other documents the Court may incorporate by reference into the Complaint, all pleadings and papers on file in this action, all matters of which this Court may take judicial notice, and upon such other and further oral or documentary evidence as may be presented to the Court at or prior to the hearing on this motion.

## L.R. 7-3 Statement of Compliance

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on January 22, 2026. Counsel conferred in good faith but were unable to reach a resolution on the issues presented in this Motion.

Dated:  January 30, 2026

Respectfully submitted,

MAYER BROWN LLP

By: */s/ Archis A. Parasharami*
    Archis A. Parasharami

*Attorneys for Defendant Spotify USA Inc.*

i

1

# TABLE OF CONTENTS

2

**Page(s)**

3

INTRODUCTION .............................................................................................. 1

4

BACKGROUND ................................................................................................ 2

5

LEGAL STANDARD ......................................................................................... 4

6

ARGUMENT ..................................................................................................... 5

7

A. Plaintiff's Negligence Claim Fails. ........................................................ 5

8

   1.   California law does not recognize the novel duty plaintiff

9

      seeks to impose on Spotify. ............................................................. 6

10

   2.   California's economic loss rule bars plaintiff's claim. ................... 8

11

B. Plaintiff's UCL Claim Fails. ................................................................... 9

12

   1.   Plaintiff fails to state a claim under the fraudulent prong. ......... 9

13

   2.   Plaintiff's derivative claim under the unfair prong of the

14

      UCL also fails. ............................................................................... 14

15

   3.   Plaintiff's claim under both prongs independently
      fails because plaintiff cannot recover the equitable relief

16

      he requests. ................................................................................... 15

17

C. The Complaint Should Be Dismissed With Prejudice. ...................... 17

18

CONCLUSION .............................................................................................. 18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).....................................................................................4, 5

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1990)............................................................................5

*Barfresh Food Grp., Inc. v. Schreiber Foods, Inc.*,
   2023 WL 2558546 (C.D. Cal. Jan. 9, 2023) ..................................................11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................5

*Best Carpet Values, Inc. v. Google, LLC*,
   90 F.4th 962 (9th Cir. 2024) ............................................................................5

*Body Jewelz, Inc. v. Valley Forge Ins. Co.*,
   241 F. Supp. 3d 1084 (C.D. Cal. 2017) ...........................................................8

*Brown v. USA Taekwondo*,
   11 Cal. 5th 204 (2021).........................................................................5, 6, 7, 8

*Chebul v. Tuft & Needle, LLC*,
   2024 WL 5257021 (C.D. Cal. Oct. 9, 2024)...................................................17

*Chen v. Fineman*,
   2024 WL 1136307 (C.D. Cal. Feb. 6, 2024) ...................................................7

*In re Cloudera, Inc.*,
   2021 WL 2115303 (N.D. Cal. May 25, 2021)................................................11

*Doe v. CVS Pharmacy, Inc.*,
   982 F.3d 1204 (9th Cir. 2020)....................................................................9, 14

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016).........................................................................17

*Guzman v. Polaris Indus.*,
  2020 WL 2477684 (C.D. Cal. Feb. 13, 2020) ................................................ 12

*Heredia v. Sunrise Senior Living LLC*,
  2021 WL 819159 (C.D. Cal. Feb. 10, 2021) ................................................ 16

*Hoffman v. Ford Motor Co.*,
  2021 WL 3265010 (C.D. Cal. Mar. 31, 2021)................................................ 12

*Johnson v. Maker Ecosys. Growth Holdings, Inc.*,
  2023 WL 2191214 (N.D. Cal. Feb. 22, 2023) ................................................ 8

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)...................................................................... 10

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018)........................................................................ 3

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005)...................................................................... 3

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003)......................................................................... 16, 17

*Kwikset Corp. v. Super. Ct.*,
  51 Cal.4th 310 (2011)................................................................................... 9

*Lockheed Martin Corp. v. RFI Supply, Inc.*,
  118 F. App'x 122 (9th Cir. 2004).................................................................. 7

*Magana v. United States Gov't*,
  2025 WL 3482625 (C.D. Cal. Dec. 3, 2025) ................................................ 5

*Momtazee v. Fed. Ins. Co.*,
  2025 WL 3190788 (C.D. Cal. Sept. 30, 2025) ................................... 13, 15, 16

*Newcal Indus., Inc. v. Ikon Office Solutions*,
  513 F.3d 1038 (9th Cir. 2008)...................................................................... 13

*Patt v. Antech Diagnostics, Inc.*,
  2019 WL 6654078 (C.D. Cal. July 30, 2019) ................................. 9, 12, 13, 15

*Regents of Univ. of Cal. v. Super. Ct.*,
  4 Cal.5th 607 (2018)..........................................................................................8

*Reider v. Immaculate Baking Co.*,
  2018 WL 6930890 (C.D. Cal. Nov. 8, 2018)...................................................17

*Rowland v. Christian*,
  69 Cal. 2d 108 (1968) .......................................................................................6

*Ruberson v. Gerdau Reinforcing Steel*,
  2020 WL 3891679 (C.D. Cal. Apr. 10, 2020) ................................................15

*Salas v. Ford Motor Co.*,
  2025 WL 1967612 (C.D. Cal. July 14, 2025) ...................................................3

*Sandhu v. Cardinal Health Inc.*,
  2025 WL 2995007 (C.D. Cal. Sept. 5, 2025).....................................................7

*Shockley v. Natures Bounty NY, Inc.*,
  2024 WL 5415782 (C.D. Cal. Nov. 7, 2024)...................................................10

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020)...................................................................15, 16

*Taison Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
  2013 WL 4530470 (N.D. Cal. Aug. 26, 2013).................................................8

*In re Tobacco II Cases*,
  46 Cal.4th 298 (2009)......................................................................................12

**Statutes**

Cal. Bus. & Prof. Code § 17203.........................................................................15

**Other Authorities**

Fed. R. Civ. P. 9(b)...............................................................................................2

Fed. R. Civ. P. 12(b)(6) ........................................................................................4

Restatement (Second) of Torts § 314 ...................................................................6

Restatement (Second) of Torts § 314A.................................................................7

Restatement (Second) of Torts § 324A ................................................................. 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

vi

# **INTRODUCTION**

The plaintiff in this case, an artist known as "RBX," asserts claims against Spotify based largely on allegations that a *different artist's* music *may have* been subjected to artificial streaming—activity where unknown bad actors use bots and other technical means to impersonate authentic listening activity and inflate the count of how many times a particular song is played. Plaintiff does not allege that Spotify had anything to do with that conduct. To the contrary, he admits that Spotify prohibits artificial streaming; devotes significant resources to detect, prevent, and remedy such activity; removes artificial streams it detects from stream counts; and imposes financial penalties for "labels and distributors" who violate its rules. Plaintiff claims nevertheless that Spotify has failed to adequately combat such conduct by third parties and that he received a (relatively) lower amount in royalty payments as a result.

But the fundamental legal problem with plaintiff's claims is that he has no direct relationship with Spotify. He does not directly license his music or upload it to Spotify. Spotify accordingly does not owe any royalties directly to him. Plaintiff attempts to circumvent this lack of a relationship with Spotify by instead seeking to hold Spotify liable in tort and to challenge Spotify's representations about its artificial streaming efforts and policies under California's Unfair Competition Law. Those claims are fatally flawed as a matter of law and must be dismissed.

First, plaintiff's negligence claim fails because California law does not recognize the broad tort duty plaintiff seeks to impose: a novel and unprecedented duty to protect music rightsholders from the conduct of third parties (here, third-party artificial streamers). In California, it is black-letter law that there is no tort-based duty to protect against harm caused by third

1

parties unless there is a "special relationship" between the parties. Here, there is no such special relationship. This failure alone bars plaintiff's negligence claim. And under California's economic loss doctrine, the absence of such a special relationship also precludes plaintiff from pursuing a claim for negligence resting on alleged harms that are purely economic.

Plaintiff's claim for a violation of California's UCL is equally defective. Plaintiff has not satisfied the pleading requirements of Rule 9(b) that apply to claims sounding in fraud; the complaint does not even plead that plaintiff in fact relied on any alleged misrepresentations; and his attempt to obtain equitable relief under the UCL fails under binding Ninth Circuit precedent.

For these and the other reasons detailed below, the Court should dismiss the complaint in its entirety with prejudice.

## BACKGROUND

Spotify is the world's most popular audio streaming subscription service with over 100 million tracks and over 713 million users. Compl. ¶ 34.[1] Creating opportunities for creative artists to live off their art is central to Spotify's mission.[2]

In keeping with this mission, Spotify takes misuse of its service seriously. As the complaint acknowledges, Spotify devotes significant resources to combatting the industry-wide problem of artificial streaming[3]: its policies

---

[1] *See also* https://newsroom.spotify.com/company-info/. We use the term "Spotify" for ease of reference (and also use "Spotify" to refer to the service). The complaint originally named three distinct Spotify entities as defendants—Spotify USA Inc., Spotify Technology S.A., and Spotify AB—but the parties have stipulated to the dismissal of Spotify Technology S.A. and Spotify AB.

[2] *See* https://newsroom.spotify.com/company-info/.

[3] An artificial stream is a stream that doesn't reflect a user's genuine intent to listen to a music track, including any instance of attempting to manipulate streaming services like Spotify by using automated processes (like bots or scripts). *See* https://artists.spotify.com/artificial-streaming; *see also* https://

2

prohibit artificial streaming; it deploys methods to detect, prevent, and remedy artificial streaming on its platform; it conducts daily cleaning to ensure artificial streams do not count toward public stream numbers; and it imposes penalties on labels and distributors "when flagrant artificial streaming is detected on their content."[4] A variety of bad actors can be responsible for artificial streaming, including paid third-party marketing and promotional services.[5] Spotify is proud to be a founding member of the Music Fights Fraud Alliance, a global task force aimed at eradicating streaming fraud.[6]

Plaintiff Eric Dwayne Collins, whose stage name is "RBX," is a California-based rap artist whose music is available on Spotify. Compl. ¶¶ 21, 82-86. Plaintiff's theory is that any artificial streaming of another artist's music (the complaint focuses almost exclusively on Drake, another rap artist)

---

support.spotify.com/us/artists/article/third-party-services-that-guarantee-streams/ (cited at Compl. ¶ 52 n.8). The Court may consider Spotify's Spotify for Artists website because it is incorporated by reference into the complaint and plaintiff relies on portions of that website (e.g., Compl. ¶¶ 51-52 & nn. 7-8) in asserting his claims. *See Salas v. Ford Motor Co.*, 2025 WL 1967612, at *8 (C.D. Cal. July 14, 2025) (Staton, J.) ("'Once a document is deemed incorporated by reference, the entire document is assumed to be true for purposes of a motion to dismiss, and both parties—and the Court—are free to refer to any of its contents.'") (quoting *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 n.10 (9th Cir. 2014)); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (treating "home page" and "surrounding pages" as incorporated by reference, not just the exact portion of the website cited by the plaintiff). The incorporation-by-reference doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (citation omitted); *see Salas*, 2025 WL 1967612, at *8 n.5 (citing *Khoja*, 899 F.3d at 1002).

[4] *See* https://artists.spotify.com/artificial-streaming.

[5] *See id.*; *see also* Compl. ¶¶ 44-49.

[6] *See* https://artists.spotify.com/artificial-streaming.

1  ultimately results in an underpayment of royalties owed to plaintiff. *Id.* ¶¶ 59-
2  71.

3  Based on that theory, plaintiff asserts two causes of action. First, he
4  contends that Spotify is negligent for allegedly taking "insufficient measures"
5  to combat artificial streaming. Compl. ¶¶ 13, 15, 101-112. Second, he alleges
6  that Spotify has made false or misleading statements about its efforts to
7  combat artificial streaming, in violation of California's Unfair Competition
8  Law. *Id.* ¶¶ 51-58, 113-123.

9  In describing how Spotify operates, the complaint fails to provide critical
10  context. Most notably, plaintiff fails to mention that Spotify, like other digital
11  streaming services, does not license music directly from, or owe royalties
12  directly to, RBX or any other artist; Spotify instead licenses music catalogs
13  from record labels, distributors, and other rightsholders.[7]

14  Those licensors, in turn, pay individual artists like RBX in accordance
15  with their respective agreements (to which Spotify is not a party).[8] For that
16  reason, as Spotify informs artists, "exactly when and how much artists get paid
17  depends on *their agreements with their record label or distributor*."[9]

18  ### LEGAL STANDARD

19  To survive dismissal under Rule 12(b)(6), "a complaint must contain
20  sufficient factual matter, accepted as true, to 'state a claim to relief that is
21  plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*
22  *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the
23  elements of a cause of action, supported by mere conclusory statements, do not

---

24

25  [7] *See* https://artists.spotify.com/get-started. That page links in turn to
26  https://loudandclear.byspotify.com/ for a more detailed explanation in response
   to the question, "How do artists get paid on Spotify?".

27  [8] *See* https://loudandclear.byspotify.com/#process.

28  [9] https://artists.spotify.com/get-started (emphasis added).

4

1
2
3
4
5
6

suffice." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," there is no plausible claim for relief. *Id.* at 679. Mere recitation of legal conclusions is not enough, and courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see generally Magana v. United States Gov't*, 2025 WL 3482625, at *1 (C.D. Cal. Dec. 3, 2025) (Staton, J.).

7
8
9
10
11
12

The Court should not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 968 (9th Cir. 2024). Dismissal can be based on either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

13

### ARGUMENT

14

#### A.   Plaintiff's Negligence Claim Fails.

15
16
17
18
19
20
21

Under California law, a plaintiff alleging negligence must establish (1) a legal duty, (2) breach of that duty, (3) causation, and (4) damages. *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 213 (2021). Plaintiff will not be able to prove any of these elements. His theories of causation and damages rest on a fundamental mischaracterization of how Spotify operates, and his conclusory assumption that any artificial streaming automatically results in an underpayment of royalties to him is both inadequately pleaded and mistaken.

22
23
24
25
26

But the Court never needs to reach these issues because the claim fails as a matter of law for two independent reasons. *First*, plaintiff has not alleged that Spotify owes him a legal duty. And *second*, California's economic-loss rule bars plaintiff's negligence claim entirely because that claim seeks to recover only economic damages.

27
28

**1. California law does not recognize the novel duty plaintiff seeks to impose on Spotify.**

"Recovery for negligence depends as a threshold matter on the existence of a legal duty of care." *Brown*, 11 Cal. 5th at 213. Plaintiff's negligence claim here does not clear that threshold.

Plaintiff's negligence theory—that Spotify has not (in his view) taken sufficient steps to stop misconduct by third parties—runs headlong into black-letter California law. The "general rule" is that there is *no duty* in tort to protect another from the conduct of a *third party*. *See Brown*, 11 Cal. 5th at 214-15; Restatement (Second) of Torts § 314. This rule has "deep roots in the law" and "derives from the common law's distinction between misfeasance and nonfeasance, and its reluctance to impose liability for the latter." *Brown*, 11 Cal. 5th at 214 (quotation marks omitted).

This case does not fall within any of the exceptions to that general rule. As the California Supreme Court has explained, "[a] defendant cannot be held liable in negligence for harms it did not cause unless there are special circumstances—such as a special relationship to the parties—that give the defendant a special obligation to offer protection or assistance." *Brown*, 11 Cal. 5th at 220. California law requires that courts engage in a two-step inquiry. Courts must first assess whether there is a special relationship between the parties. *See id.* Even if a special relationship does exist, a legal duty is not automatic: the court then considers whether relevant policy considerations call for an exception to the asserted duty. *Id.* at 209 (citing *Rowland v. Christian*, 69 Cal. 2d 108 (1968)).

The complaint here fails at the first step, and, because there is no special relationship, there is no need to reach the *Rowland* factors. The "relationship" between Spotify and plaintiff bears no resemblance to recognized examples of special relationships that give rise to an affirmative duty to protect: "parents

1  and children, colleges and students, employers and employees, common

2  carriers and passengers, and innkeepers and guests." *Brown*, 11 Cal. 5th at

3  216; *see* Restatement (Second) of Torts § 314A. What these relationships have

4  in common is that each "'gives the victim a right to expect' protection from the

5  defendant" and "has an aspect of dependency in which one party relies to some

6  degree on the other for protection." *Chen v. Fineman*, 2024 WL 1136307, at \*3

7  (C.D. Cal. Feb. 6, 2024) (dismissing negligence claim) (quotation marks

8  omitted). In other words, special relationships generally require that the

9  plaintiff be "particularly vulnerable and dependent upon the defendant who,

10  correspondingly, has some control over the plaintiff's welfare." *Sandhu v.*

11  *Cardinal Health Inc.*, 2025 WL 2995007, at \*5 (C.D. Cal. Sept. 5, 2025)

12  (dismissing negligence claim).

13        Plaintiff alleges that Spotify "is in a special position of confidence and

14  trust and owes a duty to maintain the integrity of its revenue allocation system"

15  and "has a duty of care to" artists "whose music it hosts[.]" Compl. ¶¶ 103-04.

16  But asserting a legal conclusion does not make it so. Plaintiff alleges no basis

17  for his assertion that the law imposes on Spotify a novel, wide-ranging duty of

18  care to protect every person with music on Spotify from the conduct of third

19  parties. In fact, as noted above, Spotify does not license music directly from, or

20  owe royalties directly to, plaintiff. And the only legal authority plaintiff cites

21  (at Compl. ¶ 105), Section 324A of the Restatement (Second) of Torts, is

22  inapposite on its face. That section by its terms addresses only a duty to

23  prevent "*physical* harms" to third parties. Restatement (Second) of Torts

24  § 324A (emphasis added); *see also*, *e.g.*, *Lockheed Martin Corp. v. RFI Supply,*

25  *Inc.*, 118 F. App'x 122, 124 (9th Cir. 2004) (affirming summary judgment on

26  negligence claim for lack of duty where the plaintiff "alleged no 'physical harm,'

27  within the meaning of section 324A," and instead sought to recover for "purely

28  economic losses").

7

1    Plaintiff also has not alleged that Spotify has any relationship (much less
2    a "special" one) with "the person who created the harm" (*Brown*, 11 Cal. 5th at
3    215)—i.e., the third parties allegedly responsible for artificial streaming. That
4    type of special relationship requires a high "ability to control" (*id.*) that justifies
5    treating the defendant responsible as a matter of law for the third party's
6    conduct. This standard is difficult to meet. As the California Supreme Court
7    has recognized, it requires a level of control akin to the "parent-child
8    relationship." *Regents of Univ. of Cal. v. Super. Ct.*, 4 Cal.5th 607, 619 (2018).
9    Nothing of the sort is alleged here.

10   At bottom, no case law—certainly Spotify is aware of none—imposes a
11   special relationship (much less an accompanying legal duty) under analogous
12   circumstances.

13                 **2.    California's economic loss rule bars plaintiff's claim.**
14   California's economic loss rule—a rule that courts routinely apply in
15   dismissing negligence claims—also bars plaintiff's claim. California's
16   "economic loss rule holds that *economic* losses are recoverable 'in contract
17   alone'" rather than in tort. *Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F.
18   Supp. 3d 1084, 1092 (C.D. Cal. 2017) (emphasis added) (quoting *Robinson
19   Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979, 988 (2004)); *see also*, *e.g.*, *Taison
20   Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 2013 WL 4530470, at *9 (N.D. Cal.
21   Aug. 26, 2013) (noting the "general rule" under California law "that a plaintiff
22   may not recover in tort for its economic losses"). "The economic loss doctrine
23   applies even where a plaintiff is not in privity of contract with the defendant."
24   *Johnson v. Maker Ecosys. Growth Holdings, Inc.*, 2023 WL 2191214, at *5 (N.D.
25   Cal. Feb. 22, 2023) (citing *Dubbs v. Glenmark Generics Ltd.*, 2014 WL 1878906,
26   at *4 (C.D. Cal. May 9, 2014)).

27   Accordingly, when, as in this case, a plaintiff seeks to bring a negligence
28   claim only for economic harms, unaccompanied by personal injury or physical

                                              8

damage to property, California's economic loss rule bars the negligence claim. The "primary exception" to that "general rule of no-recovery for negligently inflicted purely economic losses is where the plaintiff and the defendant have a 'special relationship.'" *S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 400 (2019) (quoting *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979)). But for the reasons discussed above, there is no special relationship between plaintiff and Spotify.

\*   \*   \*

In short, plaintiff has attempted to propose a novel and sweeping tort duty because he lacks *any* cognizable relationship–special or otherwise–with Spotify. The negligence claim should be dismissed.

## B.   Plaintiff's UCL Claim Fails.

Plaintiff further asserts that Spotify's representations about its artificial streaming efforts and policies are inaccurate or misleading, in violation of the UCL. The UCL "prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.'" *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 320 (2011) (quoting Cal. Bus. & Prof. Code § 17200); *see Patt v. Antech Diagnostics, Inc.*, 2019 WL 6654078, at \*6 (C.D. Cal. July 30, 2019) (Staton, J.) (granting motion to dismiss). Each adjective—unlawful, unfair, or fraudulent—is treated as a separate prong of the statute. *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020).

Here, plaintiff invokes two of the three prongs: (1) allegedly fraudulent business acts, Compl. ¶ 115, and (2) allegedly unfair business practices, *id.* ¶ 118. But plaintiff fails to state a claim under either theory.

### 1.   Plaintiff fails to state a claim under the fraudulent prong.

For at least three reasons, plaintiff has not stated a claim under the UCL's fraudulent prong.

9

*First*, he has not pleaded his claim with particularity. When, as here, a plaintiff brings a claim under the UCL that sounds in fraud, that claim must be pled with particularity under Federal Rule of Civil Procedure Rule 9(b). *Shockley v. Natures Bounty NY, Inc.*, 2024 WL 5415782, at \*6 (C.D. Cal. Nov. 7, 2024) (Staton, J.); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that Rule 9(b) applies to fraud-based claims under the UCL). Accordingly, a plaintiff must allege "the who, what, when, where, and how" of the "allegedly false or misleading" statements with particularity. *Shockley*, 2024 WL 5415782, at \*6 (dismissing UCL claim because plaintiff merely made "broad allegations, including that she 'saw many advertisements for the purchase of [the Product] on media, the internet, and in the stores she shopped at'").

The handful of alleged representations plaintiff points to in the complaint (at ¶¶ 51-58) fall short of what Rule 9(b) requires. For example, the complaint states that, in November 2023, Spotify announced its "intention to implement a series of new policies designed to protect and strengthen the integrity of its music royalty ecosystem for both emerging and professional artists." Compl. ¶ 52. This general description comes nowhere close to identifying an actual statement or representation by Spotify, much less how any such statement or representation was false or misleading. Similarly, plaintiff states that "Spotify has further represented that, belatedly beginning in early 2025, it will impose financial penalties on labels and distributors when 'flagrant' artificial streaming is detected on their content." *Id.* ¶ 55. Again, this allegation does not include the actual language of the representation.

One of the only statements that plaintiff quotes (rather than characterizes) is language on Spotify's website stating that Spotify puts "'significant engineering resources and research into detecting, mitigating, and removing artificial streaming activity on Spotify" and that "[a]s part of these

1  efforts, we conduct daily cleaning to ensure artificial streams are removed from
2  public numbers in the Spotify app. This is essential to ensure a level playing
3  field, where nobody is able to use artificial streaming to increase the perceived
4  popularity of their music on Spotify.'" Compl. ¶ 52. Plaintiff also quotes the
5  portion of Spotify's website stating that Spotify's requirement that a track be
6  streamed a minimum of 1,000 times within a twelve-month period to be
7  included in the royalty pool calculation "will eliminate one strategy used to
8  attempt to game the system or hide artificial streaming, as uploaders will no
9  longer be able to generate pennies from an extremely high volume of tracks."
10 Compl. ¶ 53.

11     Plaintiff, however, has not alleged any "explanation of why or how" any
12 of the representations or characterizations above were "false or misleading"
13 when made, as Rule 9(b) requires. *Barfresh Food Grp., Inc. v. Schreiber Foods*,
14 *Inc.*, 2023 WL 2558546, at \*2 (C.D. Cal. Jan. 9, 2023) (quotation marks omitted)
15 (dismissing claim). As Judge Koh similarly put it in dismissing a fraud-based
16 claim for failure to satisfy Rule 9(b), a plaintiff "must allege contemporaneous
17 facts that would establish a contradiction between the alleged materially
18 misleading statements and reality." *In re Cloudera, Inc.*, 2021 WL 2115303, at
19 \*14 (N.D. Cal. May 25, 2021) (quotation marks omitted). Plaintiff does not
20 allege any facts, contemporaneous or otherwise, that contradict Spotify's
21 alleged representations about its artificial streaming detection efforts and
22 policies. To the contrary, plaintiff *concedes* that Spotify undertakes "efforts to
23 implement countermeasures" to fraudulent streaming. (Compl. ¶ 76). At
24 bottom, plaintiff's theory rests entirely on the allegation that some artificial
25 streaming—chiefly involving the music of a single artist, Drake, on a platform
26 with thousands of artists' music and millions of tracks—still occurs. This falls
27 far short of pleading that Spotify's representations about its artificial
28 streaming policies and detection efforts were false or misleading.

11

1    *Second*, plaintiff has failed to allege reliance on *any* purported
2    misrepresentation. To state a representation-based claim under the UCL, a
3    plaintiff must plead actual reliance on the alleged misrepresentation. *Guzman*
4    *v. Polaris Indus.*, 2020 WL 2477684, at \*3 (C.D. Cal. Feb. 13, 2020) (Staton, J.).
5    And "[t]o show actual reliance, a plaintiff must demonstrate that 'the
6    misrepresentation was an immediate cause of the [plaintiff's] injury-producing
7    conduct.'" *Id.* (quoting *In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009)).
8    "[T]his Court has repeatedly required allegations of actual reliance to
9    adequately plead UCL" claims and dismissed claims for failing to meet that
10   requirement. *Hoffman v. Ford Motor Co.*, 2021 WL 3265010, at \*5 (C.D. Cal.
11   Mar. 31, 2021) (Staton, J.) (collecting cases).

12       Here, the complaint does not attempt to plead that plaintiff actually
13   relied on any representation. And it certainly fails to allege that any
14   representation affected plaintiff's behavior or any decision by plaintiff (or more
15   likely his record label) to put his music on Spotify. *See In re Tobacco II Cases*,
16   46 Cal. 4th at 326; *Guzman*, 2020 WL 2477684, at \*3. Indeed, it is not even
17   clear how Spotify's representations about its artificial streaming efforts and
18   policies *could* have impacted plaintiff's behavior or decision-making—even
19   assuming plaintiff had the right to control whether his music was uploaded to
20   Spotify. That only underscores the oddity of plaintiff's attempt to assert a
21   misrepresentation-based claim.

22       *Third*, almost all of the handful of statements that plaintiff identifies are
23   not actionable, because they are not capable of being proven false or being
24   interpreted as a statement of objective fact. "To be actionable as an affirmative
25   misrepresentation, a statement must make a 'specific and measurable claim,
26   capable of being proved false or of being reasonably interpreted as a statement
27   of objective fact.'" *Patt*, 2019 WL 6654078, at \*6 (quoting *Vitt v. Apple Computer,*
28   *Inc.*, 469 F. App'x 605, 607 (9th Cir. 2012) (further quotation marks omitted));

12

1  *accord Newcal Indus., Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1053 (9th
2  Cir. 2008) (similar).

3       Plaintiff quotes language from the website stating that Spotify puts
4  "significant engineering resources and research into detecting, mitigating, and
5  removing artificial streaming activity on Spotify so that nothing stands in the
6  way of our mission of giving artists the opportunity to live off their art, and so
7  that artists, songwriters, and rights holders are paid as fairly as possible for
8  their work." Compl. ¶ 52. No part of that sentence is actionable. While Spotify's
9  efforts to address artificial streaming are indeed significant under any
10 ordinary use of the term—and plaintiff never plausibly alleges facts to the
11 contrary—"significant" is too subjective a term to be a "*specific and measurable*
12 claim, capable of being proved false." *Patt*, 2019 WL 6654078, at \*6 (emphasis
13 added). The remainder of the sentence about Spotify's mission and paying
14 rights holders as fairly as possible for their work likewise contains no objective
15 statements of fact that plaintiff could attempt to prove are false.

16      Similarly, the complaint alleges that "Spotify further stated that it
17 *believes* this policy [of requiring a minimum number of streams] 'will eliminate
18 one strategy used to attempt to game the system or hide artificial streaming.'"
19 Compl. ¶ 55 (emphasis added). These types of purported statements of
20 intention and belief are not objective facts capable of being proven false either.
21 *See Momtazee v. Fed. Ins. Co.*, 2025 WL 3190788, at \*4 (C.D. Cal. Sept. 30,
22 2025) (Staton, J.) (dismissing claims: "[A] statement about Defendant's beliefs
23 is not a guarantee, and even if it were, transparency is too subjective a term.").

24      For each of these independently sufficient reasons, the Court should
25 dismiss plaintiff's claim under the UCL's fraudulent prong.

26
27
28

13

## 2. Plaintiff's derivative claim under the unfair prong of the UCL also fails.

Under the UCL's unfair prong, courts consider whether (1) the alleged conduct is "tethered" to an underlying constitutional, statutory, or regulatory provision or threatens a violation of antitrust law, (2) the alleged conduct is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," or (3) "whether the practice's impact on the victim outweighs the reasons, justifications and motives of the alleged wrongdoer." *CVS Pharmacy*, 982 F.3d at 1215 (quotation marks omitted) (affirming dismissal of complaint for failure to state a claim). The plaintiff must adequately plead the unfair prong "to give proper notice of [plaintiff's] claim and the grounds on which it lies." *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

Here, plaintiff merely parrots the legal standards, stating that Spotify's alleged "conduct offends public policy and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers. Any justification for Defendants' practices is outweighed by the consequences and harm to Plaintiff[.]" Compl. ¶ 118. This conclusory assertion "allege[s] no facts that would support [Plaintiff's] position, and [his] conclusory recitation of one of the UCL's legal standards does not clarify what conduct [he] claim[s] is unfair, or on what allegations in the complaint [he] rel[ies on] for this claim." *CVS Pharmacy*, 982 F.3d at 1215.

In any event, it appears that plaintiff's bare-bones invocation of the UCL's unfair prong merely repackages his arguments under the fraudulent prong. The complaint states that, in addition to violating the fraudulent prong, Spotify's alleged "conduct also" violates the unfair prong. Compl. ¶ 118. As this Court has explained, where, as here, the "unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong

1    of the UCL cannot survive if the claims under the other two prongs of the UCL
2    do not survive." *Ruberson v. Gerdau Reinforcing Steel*, 2020 WL 3891679, at
3    \*4 (C.D. Cal. Apr. 10, 2020) (Staton, J.); *accord Patt*, 2019 WL 6654078, at \*8
4    (dismissing derivative claim under unfair prong and collecting cases). The
5    same approach is warranted here, and the Court should dismiss plaintiff's
6    derivative claim under the UCL's unfair prong for the same reasons that it
7    should dismiss his claim under the UCL's fraudulent prong.

### 3. Plaintiff's claim under both prongs independently fails because plaintiff cannot recover the equitable relief he requests.

The UCL does not permit recovery of money damages; instead, recovery
under the statute is limited to the equitable remedies of restitution and
injunctive relief. *See* Cal. Bus. & Prof. Code § 17203; *Sonner v. Premier
Nutrition Corp.*, 971 F.3d 834, 839 n.2 (9th Cir. 2020) (citing California cases).

Here, plaintiff requests "restitution and disgorgement of Defendants'
revenues and/or profits[.]" Compl. ¶ 122 & Prayer for Relief ¶ 4. The complaint
also purports to seek injunctive relief, but the only specific request for
injunctive relief articulated in the complaint is tied to the request for
restitution or disgorgement: plaintiff seeks an order "directing Defendants to
identify, with Court supervision, victims of its conduct and pay them
restitution and disgorgement of all monies acquired by Defendants[.]" *Id.* at
Prayer for Relief ¶ 5.

Plaintiff cannot seek these remedies as a matter of law, for two
independent reasons.

*First*, under binding Ninth Circuit precedent in *Sonner*, a plaintiff in
federal court must allege that he lacks an adequate legal remedy before being
able to seek equitable relief under the UCL. *Sonner*, 971 F.3d at 844; *see also*,
*e.g.*, *Momtazee*, 2025 WL 3190788, at \*8-9 (dismissing UCL claim seeking both

15

1   restitution and injunctive relief under *Sonner* where money damages were an
2   adequate remedy); *Heredia v. Sunrise Senior Living LLC*, 2021 WL 819159, at
3   \*4-5 (C.D. Cal. Feb. 10, 2021) (Staton, J.) (dismissing UCL claim under *Sonner*).
4   As this Court has recognized, *Sonner* does not apply only when the request for
5   a legal remedy is meritorious; rather, "[w]here the claims pleaded by a plaintiff
6   *may* entitle her to an adequate remedy at law, equitable relief is unavailable."
7   *Momtazee*, 2025 WL 3190788, at \*8 (quoting *Heredia*, 2021 WL 819159, at \*5).

8   Here, plaintiff has not even attempted to plead that he lacks adequate
9   remedies at law. On the contrary, he expressly requests "compensatory
10  damages"—a legal remedy—for his negligence claim. Compl. ¶¶ 111-112 &
11  Prayer for Relief ¶ 3. As in this Court's decisions in *Momtazee* and *Heredia*,
12  plaintiff "has not alleged how restitution would differ from the damages [he]
13  seek[s]." *Momtazee*, 2025 WL 3190788, at \*9. And also as in *Momtazee*, the
14  generalized request for injunctive relief does not suffice to preserve that
15  portion of the UCL claim, because "[i]t is unclear what additional value
16  Plaintiff[] would receive from injunctive relief if Plaintiff[] obtain[s] money
17  damages through [his] other claims." *Id.*

18  *Second*, the monetary relief plaintiff requests does not qualify as
19  "restitution" under the UCL, which is limited to "the *return* of money or
20  property that *was once in [plaintiff's] possession*." *Korea Supply Co. v. Lockheed
21  Martin Corp.*, 29 Cal. 4th 1134, 1148-49 (2003) (emphases added); *id.* at 1149
22  (UCL authorizes restitution to return funds in which plaintiff had "an
23  ownership interest"). The fundamental problem with plaintiff's request for
24  restitution is that plaintiff is not out of pocket at all—in other words, he is not
25  seeking the return of funds he once possessed or in which he had an ownership
26  interest. Rather, he seeks to receive increased royalty payments, but those
27  allegedly underpaid royalties were never in plaintiff's possession. *See id.* at
28  1149 (noting that the "expectancy" of a future payment does not qualify as

16

restitution). Put another way, plaintiff is calling effectively for a reallocation of payments made by labels and others to rightsholders, not for a *return* of any money *he* paid to Spotify. That is fatal to plaintiff's attempt to characterize his requested relief as restitution within the meaning of the UCL.

Finally, plaintiff's request for "disgorgement" of revenues or profits (Compl. at Prayer for Relief ¶ 4) separate from restitution is plainly unavailable as a matter of law: "nonrestitutionary disgorgement is not an available remedy" under the statute. *Korea Supply*, 29 Cal. 4th at 1148-49.

In short, plaintiff cannot obtain any of the relief he requests under the UCL, and the UCL claim should therefore be dismissed in its entirety.[10]

### C. The Complaint Should Be Dismissed With Prejudice.

While Rule 15 provides that courts should freely grant leave to amend, that rule's "liberality does not apply when amendment would be futile." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016). That is the case here: amendment could not cure the fundamental legal defects in plaintiff's claims—including the absence of a duty required to support his negligence claim and the unavailability of equitable relief under the UCL. Accordingly, the Court should dismiss the complaint with prejudice. *See*, *e.g.*, *Reider v. Immaculate Baking Co.*, 2018 WL 6930890, at *3 (C.D. Cal. Nov. 8, 2018) (Staton, J.) (dismissing original complaint with prejudice because amendment would be futile).

---

[10] The UCL claim should be dismissed in its entirety for the above reasons. But to the extent the Court determines that plaintiff can request injunctive relief but not restitution for his UCL claim, the Court should strike the request for restitution and disgorgement. *See*, *e.g.*, *Chebul v. Tuft & Needle, LLC*, 2024 WL 5257021, at *2 (C.D. Cal. Oct. 9, 2024) (Staton, J.) (treating a motion to dismiss directed only to a request for restitution but not injunctive relief as a motion to strike the request for restitution).

17

1

## CONCLUSION

2      This Court should dismiss the complaint in its entirety and with

3  prejudice.

4

5  Dated:  January 30, 2026              Respectfully submitted,

6                                         MAYER BROWN LLP

7                                         By: */s/ Archis A. Parasharami*
8                                             Archis A. Parasharami

9                                         *Attorneys for Defendant Spotify USA*
10                                        *Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

1

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Spotify USA Inc., certifies that this brief does not exceed 7,000 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 30, 2026            MAYER BROWN LLP

By: */s/ Archis A. Parasharami*
        Archis A. Parasharami

19