Daniel Alberstone (SBN 105275)
dalberstone@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
Peter Klausner (SBN 271902)
pklausner@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Los Angeles, California  91436
Telephone:  (818) 839-2333

Anthony Irpino (*pro hac vice*)
airpino@irpinolaw.com
Pearl Robertson (*pro hac vice*)
probertson@irpinolaw.com
Irpino Avin & Hawkins
2216 Magazine Street
New Orleans, Louisiana 70130
Telephone:  (504) 525-1500

*Attorneys for Plaintiff Eric Dwayne Collins*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC DWAYNE COLLINS a/k/a "RBX," individually, and on behalf of other members of the general public similarly situated,<br><br>                    Plaintiff.<br>         vs.<br><br>SPOTIFY USA, INC., SPOTIFY TECHNOLOGY, S.A., and SPOTIFY AB<br><br>                    Defendants. | Case No. 2:25-cv-10525-JLS<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS SPOTIFY USA INC.'S MOTION TO DISMISS**<br><br>Date:        April 17, 2026<br>Time:        10:30 a.m.<br>Courtroom:   8A |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

PLAINTIFF'S ALLEGATIONS ......................................................................... 1

    A.    Spotify and the Music Streaming Business ............................. 2

    B.    Streaming Fraud ......................................................................... 2

    C.    Spotify's Failure to Prevent Streaming Fraud ....................... 3

    D.    Plaintiff Collins ........................................................................ 3

LEGAL STANDARD ......................................................................................... 3

ARGUMENT ...................................................................................................... 4

I.    PLAINTIFF'S NEGLIGENCE CLAIM IS VIABLE .................................. 4

    A.    The Complaint Plausibly Alleges that Spotify Owed a Legal Duty to Plaintiff ...................................................................... 5

        i.    Spotify Has a Special Relationship with the Plaintiff ...................................................................... 6

        ii.    Spotify Has a Special Relationship with Fraudulent Streamers ................................................................ 9

    B.    The Economic Loss Doctrine Does Not Bar Plaintiff's Negligence Claim ................................................................... 11

II.    PLAINTIFF'S UCL CLAIM IS VIABLE ............................................... 13

    A.    Plaintiff's Claim under the Fraudulent Prong Is Properly Pled .......... 13

        i.    Plaintiff's Claim Is Pled with Sufficient Particularity ................................................................ 13

        ii.    Plaintiff Properly Alleges Reliance ............................... 15

        iii.    The Alleged Deceptive Statements Are Actionable ...... 16

    B.    Plaintiff's Claim under the Unfairness Prong Is Properly Pled .......... 18

i

i.      Plaintiff's Complaint Provides Sufficient Notice of
                the Unfairness Allegations ............................................... 18

ii.      Plaintiff's Unfairness Claim Is Not Derivative ............. 19

C.    Plaintiff Is Entitled to the Requested Equitable Relief ....................... 19

CONCLUSION.................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accellion, Inc. Data Breach Litigation*,
713 F. Supp.3d 623 (N.D. Cal. 2024)..........................................................8, 9, 10

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ...................................................................................4

*Autotel v. Nevada Bell Tel. Co.*,
679 F.3d 846 (9th Cir. 2012) .........................................................................7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................5

*Bezirganyan v. BMW of N. Am., LLC*,
562 F. Supp. 3d 633 (C.D. Cal. 2021)............................................................22

*Brown v. USA Taekwondo*,
483 P.3d 159 (Cal. 2021)..........................................................................*passim*

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) ...........................................................................4

*Chebul v. Tuft & Needle, LLC*,
No. 2:24-cv-02707-JLS-MAR (J. Staton) (C.D. Cal. Oct. 9, 2024) ..................27

*Clemmens v. Am. Honda Motor Co.*,
No. 2:24-CV-09728-ODW (SKX), 2025 WL 1994018 (C.D. Cal.
July 17, 2025) ...............................................................................................18

*Daniel v. Ford Motor Co.*,
806 F.3d 1217 (9th Cir. 2015)........................................................................21

*Diaz v. Intuit, Inc.*,
15-cv-1778, 2018 WL 2215790 (N.D. Cal. May 15, 2018)................................8

*Doe v. CVS Pharmacy, Inc.*,
982 F.3d 1204 (9th Cir. 2020)........................................................................24

*Doe v. Uber Technologies, Inc.*,
   19-cv-03310, 2022 WL 4281363 (N.D. Cal. Sept. 15, 2022) ............................. 6

*Germain v. J.C. Penny Co.*,
   2009 U.S. Dist. LEXIS 60936 (C.D. Cal. Dec. 13, 2009) ................................. 18

*Gottreich v. San Francisco Investment Corp.*,
   552 F.2d 866 (9th Cir. 1977) .......................................................................... 18

*Hawkins v. Bank of America, N.A.*,
   17-cv-01954, 2018 WL 1316160 (S.D. Cal. March 14, 2018) ..................... 8, 10

*J'Aire Corp. v. Gregory*,
   598 P.2d 60 (Cal. 1979) .................................................................................. 15

*In re JUUL Labs, Inc., Marketing, Sales Practices, and Products
   Liability Litigation*,
   497 F. Supp.3d 552 (N.D. Cal. 2020) .............................................................. 14

*K.G. v. S.B.*,
   259 Cal. Rptr.3d 818 (Cal. Ct. App. 2020) ..................................................... 12

*Kenney v. Bank of America, N.A.*,
   25-cv-02726, 2025 WL 2117409 (C.D. Cal. July 14, 2025) .............................. 8

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ............................................................................. 28, 29

*KYA Servs., LLC v. Midwest Elastomers, Inc.*,
   22-cv-01673, 2023 WL 8896926 (C.D. Cal. Dec. 18, 2023) ............................ 14

*Mayall on Behalf of H.C. v. USA Water Polo, Inc.*,
   909 F.3d 1055 (9th Cir. 2018) ........................................................................... 6

*Momtazee v. Fed. Ins. Co.*,
   2025 WL 3190788 (C.D. Cal. Sept. 30, 2025) ................................................. 22

*Ozeran v. Jacobs*,
   798 Fed. Appx. 120 (9th Cir. 2020) ................................................................. 15

*Regents of Univ. of Cal. v. Super. Ct.*,
   413 P.3d 656 (2018) ...................................................................................... 8, 9

iv

*Rowland v. Christian,*
  69 Cal.2d 108 (1968) ................................................................................................7

*Sand, Inc. v. United California Bank,*
  582 P.2d 920 (Cal. 1978) ........................................................................................8

*Shin v. BMW of North America,*
  No. CV 09-00398, 2009 WL 2163509 (C.D. Cal. July 16, 2009) ....................20

*Shockley v. Natures Bounty NY, Inc.,*
  2024 WL 5415782 (C.D. Cal. Nov. 7, 2024) ..............................................17, 18

*Smith v. Freund,*
  121 Cal. Rptr.3d 427 (Cal. Ct. App. 2011) .........................................................12

*Sonner v. Premier Nutrition Corp.,*
  971 F.3d 834 (9th Cir. 2020) ............................................................................26, 28

*Sosa Ent. LLC v. Spotify AB,*
  No. 2:19-cv-00843 (M.D. Fla. May 18, 2020) ....................................................14

*Stenhouse v. Cnty. of Los Angeles,*
  No. 2:23-CV-08795-CBM-PVC, 2025 WL 1783705 (C.D. Cal.
  June 2, 2025) ...........................................................................................................24

*The Law Firm of Fox & Fox v. Chase Bank, N.A.,*
  313 Cal. Rptr.3d 244 (Cal. Ct. App. 2023) .........................................................15

*In re Tobacco II Cases,*
  46 Cal. 4th 298 (2009) .............................................................................................20

**Statutes**

Cal. Bus. & Prof. Code § 17203 ................................................................................25, 29

**Other Authorities**

Fed. R. Civ. P. Rule 8 ..........................................................................................*passim*

Fed. R. Civ. P. Rule 9 ..........................................................................................*passim*

Fed. R. Civ. P. Rule 12 ................................................................................6, 27, 29

v

**INTRODUCTION**

Plaintiff Eric Dwayne Collins a/k/a "RBX" (hereinafter "Plaintiff" or "Plaintiff Collins") alleges that Defendant Spotify USA, Inc. ("Defendant" or "Spotify"), the world's most popular audio streaming subscription service, deliberately turns a blind eye to rampant "streaming fraud" occurring on its platform. By allowing bad actors to artificially inflate the number of music streams for certain artists, Spotify increases its advertising revenue and the overall value of the company. This additional revenue, however, is not free; it comes at the expense of other recording artists and music rights holders, like Plaintiff Collins, whose music is devalued by the artificial streams. Plaintiff's allegations, along with the legal claims giving rise to relief, are plainly laid out in his Class Action Complaint (the "Complaint").

Defendant's Motion to Dismiss ("Motion" or "Mtn.") ignores Plaintiff's detailed factual allegations and tells a different story. According to Spotify, Plaintiff's Complaint fails to make any particularized allegations, leaving Spotify to guess as to the facts and theories underlying Plaintiff's claims. Divorced from reality, Spotify disclaims any duty to artists and rights holders and argues it cannot be held liable for the financial harms which it knowingly and negligently permits on its streaming service.

As detailed below, the Complaint's plain language belies Defendants' feigned confusion and leaves no mystery as to facts and theories underlying Plaintiff's claims. Moreover, Spotify unquestionably has a legal duty to protect the interests of the artists whose music is streamed from its platform. For these reasons and others submitted herein, this Court should deny Spotify's Motion in its entirety.

**PLAINTIFF'S ALLEGATIONS**

Plaintiff filed his Complaint on November 2, 2025. (ECF 1.) Plaintiff's allegations center on fraudulent music streams that occur on the music streaming service, Spotify, and which cause financial harm to artists, songwriters, and other

music rights holders who derive revenue from legitimate music streams. Complaint ("Compl.") ¶¶ 3-4.

### A.  Spotify and the Music Streaming Business

Spotify is the world's most popular music streaming service. *Id.* ¶ 34. Music streaming is a particular type of media that allows people to listen to music and podcasts on demand. *Id.* ¶ 27. Generally, every time a song or podcast is streamed from one of these services, the artists and other rights holders are compensated with royalites. *Id.* ¶ 29.

Some streaming services, like Spotify, generate revenue from subscription fees paid by monthly subscribers, as well as advertising dollars. *Id.* ¶ 31.  Under this system, rather than being paid for every individual stream, rights holders are paid a portion of the revenue pool based on the percentage of total streams attributable to their music. *Id.*  But these revenue pools are finite. Thus, any time a rights holder's share of the revenue pool increases due to increased music streams, the shares of other rights holders necessarily decrease. *Id.* ¶¶ 31-32.

### B.  Streaming Fraud

Certain bad actors engage in "streaming fraud," whereby music streams are fraudulently increased for certain artists to increase their revenue share and capture ill-gotten music royalties. *Id.* ¶ 44. Streaming fraud is often carried out by "Bots," which are automated software programs that perform repetitive tasks on the internet. *Id.* ¶ 45. In the context of streaming fraud, large numbers of Bots are programmed to repeatedly and continuously stream certain songs, thereby fraudulently inflating the number of streams for that music and increasing the revenue share for the rights holders. *Id.*

PLAINTIFFS' OPPOSITION TO DEFENDANTS SPOTIFY USA INC.'S MOTION TO DISMISS

### C.   Spotify's Failure to Prevent Streaming Fraud

Spotify expressly represents that streaming fraud is prohibited on its platform. *Id.* ¶ 51. Over the years, Spotify has made numerous public statements regarding the methods it deploys to detect, prevent, and remedy artificial streams. *Id.* ¶¶ 51-56.

However, despite these assurances, artificial streaming activity has occurred and persists on Spotify's platform. *Id.* ¶ 57.[1] In fact, Spotify is one of the *easiest* platforms to defraud using Bots due to its negligent, if not, non-existent security measures. *Id.* ¶ 73. This ongoing fraud shows that Spotify's detection mechanisms and enforcement policies are ineffective, inconsistently applied, and insufficient to prevent the manipulation of royalty distributions. *Id.* Critically, more users and music streams, even if fraudulent, means more advertising dollars for Spotify. *Id.* ¶¶ 14, 75.

### D.   Plaintiff Collins

Plaintiff Collins is an American rapper and recording artist. *Id.* ¶ 82. His music, to which he owns the royalty rights, is available for streaming on Spotify. *Id.* ¶ 86. As such, he derives revenue from his share of the revenue pool determined by the total number of streams of his music. *Id.* Along with other rights holders, Plaintiff's share of Spotify's revenue pool is unjustly diminished as a result of the fraudulent streaming that Spotify fails to detect or remedy. *Id.* ¶ 87.

### LEGAL STANDARD

When reviewing a motion to dismiss, the Court must: (1) construe the complaint in the light most favorable to the plaintiff; and (2) accept all well-pled allegations of the complaint as true. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337 (9th Cir. 1996). This principle has not changed under *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("When there are well-pled factual allegations, a court should

---

[1] *See also id.* ¶¶ 59-71 (evidence reveals a massive volume of fraudulent streams on Spotify specifically of music produced by the Hip-Hop artists commonly known as "Drake.")

assume their veracity and then determine whether they plausibly give rise to an entitlement to relief"). Furthermore, the Supreme Court cautioned that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**ARGUMENT**

## I.   PLAINTIFF'S NEGLIGENCE CLAIM IS VIABLE

Spotify's attack upon Plaintiff's negligence claim rests entirely on the disavowal of any legal duty by Spotify for the thousands of recording artists, song writers, and other rights holders who trust Spotify to both stream their content *and* safeguard the rightful compensation for their work. *See* Mtn. at 5 (arguing that Plaintiff "has not alleged that Spotify owes him a legal duty"); *id*. at 9 (arguing the exception to California's economic loss rule does not apply because "there is no special relationship between plaintiff and Spotify."). In doing so, Spotify would lead this Court to believe that the only special relationships that give rise to an affirmative duty to protect are those that existed prior to the 20th century, and before the advent of computer technology. Mtn. at 7 (citing cases). This position is untenable as it would allow Spotify, along with all other technology companies, to enjoy immunity from any responsibility to maintain the integrity of the digital systems that house the private financial information and intellectual property of millions of paying customers from whom companies, like Spotify, earn enormous profits. Though convenient, Spotify's assessment of the governing legal standards and principles is flawed. As alleged in the Complaint, and detailed below, Plaintiff has a special relationship with Spotify that imputes a legal duty to protect him and other class members from streaming fraud. Accordingly, Plaintiffs' negligence claim is properly pled pursuant to Rule 12(b)(6), and Spotify's Motion should be denied.

**A.      The Complaint Plausibly Alleges that Spotify Owed a Legal Duty to Plaintiff**

"To prevail in a negligence claim under California law, a plaintiff must plead the existence of a duty, a breach of that duty, and damages proximately caused by the breach" *Mayall on Behalf of H.C. v. USA Water Polo, Inc.*, 909 F.3d 1055, 1060 (9th Cir. 2018). California law recognizes that a defendant may have a duty to protect a plaintiff from harm at the hands of a third party where it has a "special relationship" with either (1) the plaintiff <u>or</u> (2) with the "person who created the harm." *See Brown v. USA Taekwondo*, 483 P.3d 159, 215 (Cal. 2021). While Spotify argues that it lacks a special relationship with the Plaintiff, it brazenly ignores its legal duty to protect recording artists, like Plaintiff, from fraud perpetuated by others on Spotify.

Courts conduct a two-step inquiry when analyzing whether a defendant has a legal duty to protect the plaintiff from harm caused by a third party. *See Brown*, 483 P.3d at 222. First, the court must determine "whether there exists a special relationship between the parties or some other set of circumstances giving rise to an affirmative duty to protect." *Doe v. Uber Technologies, Inc.*, 19-cv-03310, 2022 WL 4281363, at *2 (N.D. Cal. Sept. 15, 2022). If there is, the court then considers "whether the policy considerations set forth in *Rowland v. Christian*, 69 Cal.2d 108 (1968) counsel for limiting that duty." *Id.* The so-called *Rowland* factors include:

> [T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

PLAINTIFFS' OPPOSITION TO DEFENDANTS SPOTIFY USA INC.'S MOTION TO DISMISS

*Rowland*, 69 Cal.2d at 113.[2]

### i.        Spotify Has a Special Relationship with the Plaintiff

A special relationship between the defendant and a victim is one that "gives the victim a right to expect" protection from the defendant. *Brown,* 483 P.3d 159 at 216. A defendant owes a plaintiff a duty where the former is "in a unique position to protect the" latter "from injury." *Id.* Such special relationships recognized by law typically have one party that depends on the other for protection and another that has "superior control over the means of protection." *See Regents of Univ. of Cal. v. Super. Ct.*, 413 P.3d 656, 664-65 (2018).

While classic examples of special relationships include those cited by Spotify, including those "between parents and children" and "innkeepers and guests"—*see* Mtn. at 7 (citing cases)—courts repeatedly impose a legal duty to protect against third party harm, including fraud, on entities like Spotify who are entrusted with the assets or sensitive information of another party. *See In re Accellion, Inc. Data Breach Litigation*, 713 F. Supp.3d 623, 632-36 (N.D. Cal. 2024) (ruling that a file transfer company had a duty to safeguard the plaintiff's personally identifiable information from third party data breaches because it was "in the position to ensure that its systems were sufficient to protect against the foreseeable risk of harm"); *Diaz v. Intuit, Inc.*, 15-cv-1778, 2018 WL 2215790, at *5 (N.D. Cal. May 15, 2018) (recognizing that a tax preparation software service would owe a duty to a plaintiff whose personal information was fraudulently accessed where the service had

---

[2]  Defendants did not address the *Rowland* factors in their Motion and thus, waived the argument in support thereof. *Autotel v. Nevada Bell Tel. Co.*, 679 F.3d 846, 852 n.3 (9th Cir. 2012). Nevertheless, the factors weigh heavily in favor of imposing a duty on Spotify in this case. The Complaint alleges numerous facts demonstrating that the threat of streaming fraud to the revenue pool's integrity was foreseeable. *See,* Compl. ¶¶ 60-67, 70. Moreover, there is no plausible social utility to allowing a platform to turn a blind eye to streaming fraud.

PLAINTIFFS' OPPOSITION TO DEFENDANTS SPOTIFY USA INC.'S MOTION TO DISMISS

sufficient "objective indicia" of fraud to alert the defendant); *Kenney v. Bank of America, N.A.*, 25-cv-02726, 2025 WL 2117409, at *3 (C.D. Cal. July 14, 2025) ("Banks do, however, have a duty to investigate potential fraud when the fraud is brought to their attention."); *Hawkins v. Bank of America, N.A.*, 17-cv-01954, 2018 WL 1316160, at *3-4 (S.D. Cal. March 14, 2018) (same); *Sun 'n Sand, Inc. v. United California Bank*, 582 P.2d 920, 936 (Cal. 1978) (same).

The facts of this case closely mirror those of *In re Accellion, Inc. Data Breach Litigation*. There, Plaintiffs alleged that third-party hackers exploited a software company's security vulnerabilities to access plaintiffs' sensitive information. 713 F. Supp.3d at 629-30. The court found that plaintiffs had a special relationship with the software company giving rise to a legal duty to protect the plaintiffs' information. *Id.* at 636. The court reasoned, *inter alia*, that plaintiffs relied on the software company to safeguard their personal information and that this reliance was "all the more heightened by the high value of [plaintiffs' identifying information][.]" *Id.* at 633. It further reasoned that the software company was "in the position to ensure that its systems were sufficient to protect against" data breaches, as demonstrated by its actions to fix the software's vulnerabilities after the breaches. *Id.* For the foregoing reasons, Plaintiff Collins had a "right to expect protection" from Spotify, and therefore a special relationship existed between them. *See Brown*, 483 P.3d at 216.

Similarly, Spotify has demonstrated its "superior control over the means of protection"—*see Regents*, 413 P.3d at 664-65—albeit by implementing a grossly inadequate means of detecting and remedying streaming fraud. Compl. ¶ 52 ("[W]e conduct daily cleaning to ensure artificial streams are removed from public numbers in the Spotify app."). Plaintiff Collins and other class members, like the *Data Breach Litigation* plaintiffs, relied on Spotify to safeguard the revenue pool's integrity that

PLAINTIFFS' OPPOSITION TO DEFENDANTS SPOTIFY USA INC.'S MOTION TO DISMISS

Spotify controls. *Id.* ¶ 103. Indeed, the relationship between Spotify and Plaintiff shares all the characteristics of a special relationship recognized by California law:

- Spotify controlled the means of protection against streaming fraud taking place on its platform. Compl. ¶¶ 106-107.

- Spotify had access to detailed streaming data that should have alerted it to fraudulent streaming. *Id.*

- There is a fundamental asymmetry of information between Plaintiff and Spotify that puts Spotify in the superior position to address the streaming fraud that diminished Plaintiff's and other class members' share of the revenue pool. *Id.*

Said another way, Spotify has the "superior" ability to guard against streaming fraud on its platform and Plaintiff and other class members are in no position to detect or remedy streaming fraud on Spotify's platform. *See Data Breach Litigation*, 713 F. Supp.3d 623 at 632 (quoting *Regents*, 413 P.3d at 656). Like a bank holding money, or a software company handling sensitive information, Spotify was entrusted to maintain the artist revenue pool from the well-known threat of bot-supported streaming fraud. *See Hawkins*, 2018 WL 1316160, at *3-4.

In sum, Spotify's arguments that Plaintiffs' negligence claims fail as a matter of law miss the proverbial mark. While Spotify correctly cites to *Brown* for the "general rule" against a duty to protect against third-party harm—noting its roots in the "distinction between misfeasance and nonfeasance," *see* Mtn. at 6—Spotify omits the subsequent articulation of the rule by the same Court:

> Although our precedents have sometimes referred to the distinction between 'misfeasance' and 'nonfeasance,' we now understand this terminology to be imprecise and prone to misinterpretation. The proper question is not whether an actor's failure to exercise reasonable care entails the commission or omission of a specific act.

> Rather, *it is whether the actor's entire conduct created a risk of harm.*

*Brown*, 11 Cal. 5th 204 at 215, n.6 (emphasis added) (internal citations and quotations omitted).

Here, Plaintiff's craft is making music, not addressing bot-supported fraud. As such, Plaintiff trusted Spotify to protect his share of the revenue pool from fraudulent diminution. *Id.* ¶¶ 22, 86-87. Spotify itself acknowledged its responsibility for protecting artists' revenue share from artificial streaming fraud. *Id.* ¶ 52. Moreover, as alleged in the Complaint, Spotify was in the unique position to exercise superior control of the means of protecting Plaintiff's share of the revenue stream. Accordingly, it was Spotify's "entire conduct [that] created a risk of harm" to the Plaintiff and Spotify's motion should thus be denied. *See Brown*, 11 Cal. 5th 204 at 215, n.6.

### ii.    Spotify Has a Special Relationship with Fraudulent Streamers

As detailed *supra*, *Brown* recognizes that a defendant has a duty to protect a plaintiff from harm caused by a third party where it has a "special relationship" with *either* (1) the plaintiff *or* (2) with the "person who created the harm." 483 P.3d at 215. A special relationship between the defendant and the person who created the harm is one that "entails an ability to control the third party's conduct." *Id*. at 216. A basic requisite of a duty based on such a special relationship is the defendant's ability to control the other person's conduct. *Smith v. Freund*, 121 Cal. Rptr.3d 427, 432 (Cal. Ct. App. 2011); *K.G. v. S.B.*, 259 Cal. Rptr.3d 818, 822 (Cal. Ct. App. 2020). In cases involving whether there is a duty to control the conduct of another, the foreseeability of the harm is critical to the existence of a duty. *See Smith*, 192 Cal. App. 4th at 473 (citing *Megeff v. Doland*, 123 Cal. App. 3d 251, 176 Cal. Rptr. 467 (Ct. App. 1981)

The Complaint adequately alleges that Spotify had control over streaming fraud on its platform. Specifically, it alleges that through public representations, "Spotify has repeatedly conveyed that it maintains both the capability and commitment to detect and address fraudulent streaming activity." Compl. ¶ 56. These representations include Spotify's statements that it "put significant engineering resources and research into detecting, mitigation, and removing artificial streaming activity," that it "conducts daily cleaning to ensure artificial streams are removed from public numbers in the Spotify app," and that it would "impose financial penalties on labels and distributors in the form of per-track charges when 'flagrant' artificial streaming activity is detected on their content." *Id.* ¶¶ 52, 54. Each of these allegations demonstrate that Spotify was in a position of control over fraudulent streaming on its platform.

As detailed above, the Complaint further alleges numerous facts demonstrating that the threat of fraudulent streaming to the revenue pool's integrity was foreseeable if not outright known to Spotify. *See supra,* fn. 2 (citing Compl. ¶¶ 60-67, 70); *id.* ¶ 51 ("Spotify acknowledges that [streaming fraud] compromises the integrity of its platform, misrepresents listener engagement metrics, and results in the improper allocation of royalty payments."). For example, the Complaint alleges that "while the average Spotify listener listens to 10 songs per day, a massive amount of the accounts listening to Drake's music (Drake's "users") listened exclusively to Drake's music for 23 hours a day" and that "nearly 10% of Drake's streams come from users whose location data showed that they traveled a minimum of 15,000 kilometers in a month, and moved unreasonable locations between songs (consecutive plays separated by mere seconds but spanning thousands of kilometers), including more than 500 kilometers between songs (roughly the distance from New York City to Pittsburgh)." *Id.* ¶¶ 64, 66. Spotify clearly understands that artificial streaming of one artist's music would harm the integrity

of the revenue pool and thus harm other artists. *Id.* ¶¶ 51-52. Indeed, in a counterclaim filed against one of its streaming partners, Spotify exploited its access to its own data analytics to allege the *very same type of streaming fraud* that Plaintiff now alleges here. *See* Dkt. No. 33, Case 2:19-cv-00843-JES-NPM, at 26, 38-57 (M.D. Fla. May 18, 2020)[3] (alleging a fraudulent scheme characterized by, *inter alia*, "[b]latant signifiers of artificial streaming, including highly irregular sudden spikes of streams to [Counterclaim Defendant's] content, and 99% of streams coming from Spotify's ad-supported service," as well as written communications with a "bot farmer"); *id.* at 47, ¶73 (concluding that "[t]he high improbability of all of these skewed metrics occurring at the same time creates an undeniable record of artificial streaming.").

Because Spotify had control over fraudulent streamers and it was foreseeable that streaming fraud would harm Plaintiff, Spotify had a special relationship sufficient to give rise to a legal duty to protect Plaintiff.

### B.   The Economic Loss Doctrine Does Not Bar Plaintiff's Negligence Claim

Where it applies, "California's economic loss rule prohibits parties from recovering tort damages for what is essentially a breach of contract claim." *KYA Servs., LLC v. Midwest Elastomers, Inc.*, 22-cv-01673, 2023 WL 8896926, at *3 (C.D. Cal. Dec. 18, 2023). "There is no bright-line rule barring all negligence claims for purely economic losses in California." *In re JUUL Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation*, 497 F. Supp.3d 552, 660 (N.D. Cal. 2020). Importantly, the economic loss doctrine does not apply where the parties have a special relationship. *S. California Gas Leak Cases*, 441 P.3d 881, (Cal. 2019) ("The primary exception to the general rule of no-recovery for negligently inflicted

---

[3]   *See also* Plaintiff's concurrently filed Request for Judicial Notice of Spotify's Answer & Affirmative Defenses, Third-Party Complaint, and Counterclaim, in *Sosa Ent. LLC v. Spotify AB*, No. 2:19-cv-00843 (M.D. Fla. May 18, 2020).

PLAINTIFFS' OPPOSITION TO DEFENDANTS SPOTIFY USA INC.'S MOTION TO DISMISS

purely economic losses is where the plaintiff and the defendant have a 'special relationship.'"); *see also J'Aire Corp. v. Gregory*, 598 P.2d 60, 63 (Cal. 1979).

The economic loss doctrine does not apply here because Plaintiff and Spotify have a special relationship. *See Ozeran v. Jacobs*, 798 Fed. Appx. 120, 123 (9th Cir. 2020) ("California courts have recognized an exception to [the economic loss doctrine] based on a consideration of the six-factor duty test set forth in *Biakanja v. Irving*, 49 Cal.2d 647, 320 P.2d 16, 19 (1958)."). A special relationship arises where "the plaintiff was an intended beneficiary of a particular transaction but was harmed by the defendant's negligence in carrying it out." *S. California Gas Leak Cases*, 441 P.3d at 887. Courts look to the *Biakanja* factors when determining whether the special relationship exception applies. *The Law Firm of Fox & Fox v. Chase Bank, N.A.*, 313 Cal. Rptr.3d 244, 253 n.10 (Cal. Ct. App. 2023). The *Biakanja* factors include:

> [T]he extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.

320 P.2d at 19.

Here, Plaintiff and other class members were clearly intended beneficiaries of Spotify's revenue pool. Compl. ¶¶ 86-87. Yet, Spotify carried out this transaction negligently by failing to adequately protect the revenue pool's integrity against well-known and obvious streaming fraud. *Id.* ¶¶ 60-67, 70-78. Further, Spotify understood the threat of streaming fraud to Plaintiff and other class members' interests. *Id.* ¶¶ 51-52. It acknowledged that the revenue pool was intended to benefit artists like Plaintiff and that its own actions could affect whether these artists would be fairly compensated. *Id.* Spotify's actions were also morally blameworthy because they were intentional and designed to further the company's bottom line. *Id.* ¶¶ 5,

38-29. As discussed previously, the increased threat of streaming fraud underscores the policy importance of preventing future harm to artists. The *Biakanja* factors' application to this case clearly demonstrate that the parties have a special relationship. Accordingly, the economic loss doctrine does not apply to Plaintiff's negligence claim.

## II.     PLAINTIFF'S UCL CLAIM IS VIABLE

Spotify attacks the sufficiency of Plaintiff's UCL claim on several grounds, arguing Plaintiff fails to properly state claims under both the fraudulent and unfairness prongs of § 17200 and that Plaintiff cannot recover the requested equitable relief as a matter of law. In support of these arguments, Spotify offers a tortured reading of Plaintiff's Complaint, asserting that he fails to allege with any particularity the misrepresentations and misdeeds upon which his claims are based, fails to explain how such bad acts are harmful and deceptive, and merely repackages one theory of liability as another. As explained below, Spotify's arguments lack merit.

### A.     Plaintiff's Claim under the Fraudulent Prong Is Properly Pled

#### i.     Plaintiff's Claim Is Pled with Sufficient Particularity

Regarding the fraudulent prong of the UCL, Spotify claims that Plaintiff "has not pleaded his claim with particularity." Mtn. at 10. Specifically, Spotify argues that "the handful of alleged representations plaintiff points to in the complaint fall short of what rule 9(b) requires," because "the general descriptions come nowhere close to identifying an actual statement or representation by Spotify, much less how any such statement or representation was false and misleading." *Id.* at 10. In contrast, Plaintiff's complaint leaves no mystery as to the "who, what, when, where, and how" of Spotify's misleading statements, and thus meets the heightened pleading standard required for fraud-based claims under the UCL. *See Shockley v. Natures Bounty NY, Inc.*, 2024 WL 5415782, at *6 (C.D. Cal. Nov. 7, 2024).

As a threshold matter, Spotify takes issue with Plaintiff's "general descriptions" of Spotify's misleading statements and criticizes Plaintiff for not using direct quotes. Mtn. at 10. But Spotify points to no authority requiring direct quotes of all the misleading statements at issue to satisfy Rule 9(b), as no such requirement exists. Instead, Rule 9(b)'s heightened pleading standard is satisfied simply by "plac[ing] the defendant on notice of the precise misconduct with which it charged." *Clemmens v. Am. Honda Motor Co.*, No. 2:24-CV-09728-ODW (SKX), 2025 WL 1994018, at *4 (C.D. Cal. July 17, 2025). *See also, Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866 (9th Cir. 1977) (a pleading "is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.") (Citations omitted.) To do this, "a plaintiff must plead the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Clemmens*, 2025 WL 1994018, at *4. *See also*, *Germain v. J.C. Penny Co.*, 2009 U.S. Dist. LEXIS 60936 at *9 (C.D. Cal. Dec. 13, 2009) (false advertising claims pled with particularity where the complaint identified who was responsible for the conduct and defendants could "prepare an adequate answer from the allegations"). Where courts have dismissed claims for failing to meet rule 9(b)'s heightened pleading requirement, they have done so where allegations lack *any* specific particularity. For instance, in *Shockley*, this Court dismissed the plaintiff's UCL claims because she made "broad allegations" that she "saw many advertisements" for the daily supplement at issue, without providing *any specifics*. 2024 WL 5415782, at *6.

Here, Plaintiff's Complaint cites specific, individual statements. *See*, *e.g.*, Compl. ¶ 52 (referring to Spotify's November 2023 public statement regarding its intentions to "protect and strengthen the integrity of its music royalty ecosystem"); *id*. (quoting current statements on Spotify's website that it "put[s] significant

14

engineering resources and research into detecting, mitigating, and removing artificial streaming activity" and that it "ensure[s] artificial streams are removed from public numbers in the Spotify app"). In other words, Plaintiff provides the date, the content—and in one instance a direct quote—of the misleading statements at issue, thus pleading his claims with sufficient particularity to put Spotify on notice of the misconduct with which it is charged.

Spotify nevertheless argues that Plaintiff "has not alleged any explanation of why or how any of the representations or characterizations above were false or misleading when made, as Rule 9(b) requires." Mtn. at 11 (internal quotations omitted). However, the Complaint expressly states the "how" and the "why" of Spotify's fraudulent statements; explaining—for example—that through the above statements: Spotify has (1) "repeatedly conveyed that it maintains both the capability and commitment to address fraudulent streaming activity" (Compl. ¶ 56); (2) "despite these assurances, multiple instances of artificial streaming activity have continued to occur and persist on Spotify's platform" (*id.* ¶ 57); and (3) "such activity shows that Spotify's detection mechanisms and enforcement policies are ineffective, inconsistently applied, and/or insufficient to prevent or eliminate the manipulation of royalty distributions." *Id.*

Put another way, "Spotify repeatedly and dishonestly represented that it would detect, prevent, and remedy streaming fraud on its platform. But Spotify never made good on these representations. Instead, Spotify turned a blind eye to a substantial amount of streaming fraud taking place on its platform . . ." *Id.* ¶ 116. Taken at face value, Plaintiff's Complaint leaves no confusion as to the offending statements, or to the basis for their deceptiveness.

### ii.   Plaintiff Properly Alleges Reliance

Spotify correctly argues that to adequately plead fraud claims under the UCL, plaintiffs must allege reliance. Mtn. at 12 (citing cases). However, Spotify's assertions that "plaintiff has failed to allege reliance on *any* purported

misrepresentation," and that the complaint "fails to allege that any representation affected plaintiff's behavior or any decision" lacks merit. *Id.*

The Complaint clearly alleges that for Plaintiff and members of the Class, "their monthly royalty payments depend on Spotify's commitment to root out fraud." Compl. ¶ 117. More importantly, "[h]ad Plaintiff and members of the Class known that Defendants were engaging in this wrongful conduct, they would have taken actions likely resulting in an end to the scheme, as well as some form of restitution." Compl. ¶ 120. While it is true that Plaintiff does not expressly use the word "reliance," a plaintiff can prove reliance by "showing that the defendant's misrepresentation or non-disclosure was the immediate cause of the plaintiff's injury-producing conduct." *In re Tobacco II Cases,* 46 Cal. 4th 298, 326 (2009). *See also Shin v. BMW of North America,* No. CV 09-00398, 2009 WL 2163509, at *3 (C.D. Cal. July 16, 2009) ("a plaintiff satisfies the 'as a result of' requirement by pleading that he would have behaved differently if he had been aware of the information and the undisclosed information would have been important to reasonable consumers.") Here, Plaintiff's Complaint alleges exactly that. Had Plaintiff been aware of the falsity of Spotify's stated commitments, he would have behaved differently, and taken actions to both prevent, mitigate, and remedy the harm caused by Spotify's bad conduct. Compl. ¶ 120. *See Daniel v. Ford Motor Co.,* 806 F.3d 1217, 1225 (9th Cir. 2015) (a plaintiff may establish reliance by proving that had the information been disclosed, "one would have been aware of it and behaved differently.")

### iii.    The Alleged Deceptive Statements Are Actionable

Finally, Spotify argues that the false statements identified in Plaintiff's Complaint are not actionable under the UCL because "they are not capable of being proven false or being interpreted as a statement of objective fact." Mtn. at 12. Specifically, Spotify cherry-picks two passages from Plaintiff's complaint and argues that terms therein—such as "significant"—are "too subjective" to be proved

false, and a reflection of Spotify's "intention and belief." *Id.* at 13. But Spotify conveniently ignores the portions of Plaintiff's Complaint which identify the factual statements that Plaintiff alleges are false. Compl. ¶¶ 51-55. Further, Plaintiff's allegations do not rest on Spotify's statements of belief.

As the Complaint explains, Spotify promises its musicians that it is committed to detecting streaming fraud; yet the facts alleged outline numerous instances of Spotify's failure to detect and remedy fraud that otherwise manipulates royalty distributions. *Id.* ¶¶56-57. Indeed, "Spotify never made good on these representations. Instead, Spotify turned a blind eye to a substantial amount of streaming fraud taking place on its platform" because doing so "increased Spotify's potential ad revenue." *Id.* ¶ 116.

Spotify cites to this Court's opinion in *Momtazee v. Fed. Ins. Co.*, 2025 WL 3190788, at *4 (C.D. Cal. Sept. 30, 2025) for the general proposition that "statements of intention and belief are not objective facts capable of being proven false." Mtn. at 13. *Momtazee* is clearly distinguishable. There, the Court held that the defendant insurance company's representations that it "believe[s] in total transparency," and that it was "ready to deal with claims in a fast, fair, and fuss-free way," were statements of "mere puffery," and "do[] not promise any measurable outcome." *Momtazee,* 2025 WL 3190788, at *4. Here, the misrepresentations that form the basis of Plaintiff's "fraud" claim under the UCL are not puffery, and do not speak to any party's beliefs. Spotify represented that it would work to rid its platform of artificial streams and ensure that artists receive their proper share of streaming revenue (i.e. a promise with a measurable outcome), when instead it turned a blind eye and allowed artificial streams to flourish.[4] Thus, contrary to Spotify's assertions,

---

[4] *See, Bezirganyan v. BMW of N. Am., LLC*, 562 F. Supp. 3d 633, 643 (C.D. Cal. 2021) ("a statement that is quantifiable, that makes a claim as to the specific or absolute characteristics of a product, may be an actionable statement of fact . . .").

PLAINTIFFS' OPPOSITION TO DEFENDANTS SPOTIFY USA INC.'S MOTION TO DISMISS

their public-facing commitment to protect rights-holders are "capable of being proven false," and are actionable.

### B.      Plaintiff's Claim under the Unfairness Prong Is Properly Pled

Spotify argues that Plaintiff's claim under the UCL's unfairness prong must be dismissed for two reasons. *First,* Spotify argues that Plaintiff's unfairness allegations are conclusory and "do[] not clarify what conduct he claims is unfair, or on what allegations in the complaint he relies on for this claim." Mtn. at 14. *Second*, Spotify falsely asserts that Plaintiff's unfairness claim "merely repackages his arguments under the fraudulent prong," and therefore should be dismissed "for the same reasons that it should dismiss his claim under the UCL's fraudulent prong." Mtn. at 14-15. Spotify is wrong on both grounds.

### i.      Plaintiff's Complaint Provides Sufficient Notice of the Unfairness Allegations

Plaintiff's allegations, all of which are incorporated by reference into his UCL claim (Compl. ¶ 113), leave no question as to the immoral and injurious conduct at issue. Specifically, Plaintiff alleges Defendant Spotify knowingly and intentionally allowed streaming fraud to take place on its platform, resulting in increased advertising revenues while also depriving legitimate artists their proper share of the revenue streams. Compl. ¶¶ 72-78, 111-12. Spotify did this despite having the capacity to police its platform, prevent artificial streaming, and remedy past harms. *Id*. ¶¶ 106-7. This conduct, as alleged, is unquestionably unfair, and Plaintiff's Complaint provides Spotify with sufficient notice of the grounds on which Plaintiff's "unfairness" claim lies.

*Doe v. CVS Pharmacy, Inc.,* 982 F.3d 1204 (9th Cir. 2020), on which Spotify relies, is unavailing. There, the plaintiffs "*did not expressly allege* a UCL violation on account of an unfair business practice, but the district court construed it to so plead." *CVS Pharmacy*, 982 F.3d at 1214. Unsurprisingly, the Ninth Circuit affirmed

the dismissal of this unalleged claim on the grounds that the plaintiffs "allege[d] no facts that would support their position," leaving the court "to guess what conduct [p]laintiffs alleged satisfied the 'unfair' prong of the UCL." *Id.* at 1215 (citing Fed. R. Civ. P. 8(a)(2)). *See also, Stenhouse v. Cnty. of Los Angeles*, No. 2:23-CV-08795-CBM-PVC, 2025 WL 1783705, at *4 (C.D. Cal. June 2, 2025) ("Under Rule 8(a), a complaint need only provide fair notice of what the plaintiff's claim is and the grounds upon which it rests.") (Internal citations omitted.)

Here, as explained above, Plaintiff's Complaint plainly satisfies the strictures of Rule 8(a)(2) by detailing the grounds on which the unfairness claim rests. The feigned confusion with which Spotify reads Plaintiff's Complaint should be flatly rejected.

### ii. Plaintiff's Unfairness Claim Is Not Derivative

Spotify asserts that Plaintiff's claim under the unfairness prong of the UCL is "derivative" of his fraud claim, and thus, cannot survive if the claims under the other two prongs of the UCL do not survive." Mtn. at 14-15. Spotify's argument fails for two reasons.

*First*, Plaintiff's claim under the fraudulent prong does not warrant dismissal. *See* Section II.A., *supra. Second*, Plaintiff's theory under the unfairness prong does not "overlap entirely" with the fraudulent claim. While Plaintiff's theory of liability under the fraudulent prong is premised on the *misrepresentations* Spotify makes to consumers (*see id.*), Plaintiff's theory under the unfairness prong is premised on Spotify's *internal conduct* (*i.e.*, Spotify's financially motivated acquiescence to artificial streaming and botting campaigns on its platform). *See* Section II.B.i., *supra*. Thus, even if this Court dismisses Plaintiff's claim under the fraudulent prong, Plaintiff's unfairness claim survives.

### C. Plaintiff Is Entitled to the Requested Equitable Relief

Spotify argues that Plaintiff's requests for restitution and injunctive relief are categorically unavailable because Plaintiff has an adequate remedy at law and

19

because the monetary recovery sought does not qualify as restitution. Mtn. at 15. Spotify's attempt to prematurely dispose of Plaintiff's UCL claim rests on a mischaracterization of governing law and the procedural reality of this case. Indeed, the UCL expressly authorizes restitution and injunctive relief. Cal. Bus. & Prof. Code § 17203. Because the requested relief is expressly authorized by statute and plausibly alleged, the UCL claim is squarely within the statute's design and cannot be dismissed at this stage.

Spotify's reliance on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), is misplaced. *Sonner* arose in a narrow and highly unusual procedural context: after more than four years of litigation and on the eve of trial, the plaintiff voluntarily dismissed her damages claim to recast identical monetary relief as "equitable restitution" and avoid a jury trial. *Id.* at 844. The Ninth Circuit's holding was expressly tethered to that procedural maneuver. *Id* at 845 (emphasizing that Plaintiff sought "the same $32,000,000" as both damages and restitution and failed to explain how damages were inadequate). The court held that equitable restitution could not be awarded absent a showing that legal remedies were inadequate. *Id.* at 844-45.

Here, Plaintiff has not abandoned legal remedies, nor attempted to manipulate the jury right, nor has he conceded that damages would provide an adequate remedy. The Federal Rules of Civil Procedure expressly permit alternative and even inconsistent pleading at the outset of litigation, and nothing in *Sonner* displaces that well-settled rule. *See* Fed. R. Civ. P. 8(a), 8(d)(2)-(3). Spotify's attempt to transform a case-specific remedial ruling into a broad pleading prohibition stretches *Sonner* well beyond its holding.

Moreover, Plaintiff Collins expressly pleads a negligence claim seeking compensatory damages while also alleging a UCL claim grounded in *ongoing* and systemic misconduct affecting the allocation of a finite royalty revenue pool.

PLAINTIFFS' OPPOSITION TO DEFENDANTS SPOTIFY USA INC.'S MOTION TO DISMISS

Whether damages would fully remedy Plaintiff's diminished royalty shares incurred by Defendants' conduct is a fact-intensive inquiry ill-suited to resolution on a Rule 12(b)(6) motion.

This Court's holding in *Chebul v. Tuft & Needle, LLC*, No. 2:24-cv-02707-JLS-MAR (J. Staton) (C.D. Cal. Oct. 9, 2024), confirms as much. There, this Court held that a *Sonner*-based challenge "would not dispose of an entire claim, just one remedy," and that a Rule 12(b)(6) motion "must seek to dispose of an entire claim." *Chebul*, slip op. at *3 (quoting *Kan v. Gen. Motors LLC*, 2023 WL 11197090, at *1 (C.D. Cal. Nov. 7, 2023) (Staton, J.)). The Court exercised its discretion to treat the motion as directed at the availability of equitable restitution rather than as grounds to dismiss the UCL claim itself. *Id.* That reasoning applies with equal force here.

Further, this Court recognized in *Chebul* that there exists no categorical rule that the mere theoretical availability of damages always renders equitable relief unavailable. In fact, a legal remedy *is not* rendered inadequate where a plaintiff could have pursued damages but failed to do so in a timely manner. *Chebul*, slip op. at *4. Consistent with *Chebul* and related authorities, where, as here, a plaintiff plausibly alleges that equitable restitution may be "more certain, prompt, or efficient" than damages, that is sufficient at the pleading stage to permit the claim to proceed. *Id.* at *4 (citing *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1009 (N.D. Cal. 2020)).

The Complaint's royalty-pool allegations further confirm that restitution is plausibly alleged. Plaintiff does not rely on a speculative expectancy or seek to redirect payments made to unrelated third parties. Instead, he alleges that Spotify collected subscription and advertising revenues, exercised control over their allocation, and wrongfully retained funds that should have been paid to legitimate rights holders based on actual, non-fraudulent streams. Compl. ¶¶ 105-6, 110-12, 121-23. That theory fits squarely within California restitution law, which permits

PLAINTIFFS' OPPOSITION TO DEFENDANTS SPOTIFY USA INC.'S MOTION TO DISMISS

recovery of money wrongfully withheld in which the plaintiff has an ownership or equitable interest.

The Complaint also independently and adequately supports injunctive relief, which *Sonner* did not address. Plaintiff alleges that Spotify continues to fail to detect and remedy streaming fraud, resulting in the ongoing dilution of legitimate royalty shares. Compl. ¶¶ 57, 76, 121. Injunctive relief requiring Spotify to cease unfair practices and correct its allocation system serves a forward-looking purpose distinct from compensatory damages and is not foreclosed merely because damages may be available for past harm. Spotify's theory would effectively insulate ongoing conduct from equitable oversight so long as some form of damages might later be calculated.

Spotify's final argument, invoking *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003) to challenge Plaintiff's reference to "disgorgement," does not justify dismissal of the UCL claim and instead conflates the permissible scope of remedies with the viability of the cause of action itself. At most, Spotify's objection to the prayer for "disgorgement of revenues and/or profits" concerns the scope of remedies that may ultimately be available under California Business and Professions Code section 17203, not the viability of the UCL cause of action itself. Plaintiff independently seeks injunctive relief and restitution authorized by section 17203 for funds allegedly wrongfully withheld or misallocated through Spotify's challenged revenue-allocation practices. Compl. ¶¶ 24-25 ("Prayer for Relief"). The operative allegations are restitutionary in nature and focus on the recovery of earned-but-withheld royalties, not the nonrestitutionary disgorgement barred by *Korea Supply*. If any aspect of the requested relief is deemed overbroad, the appropriate course is to tailor the remedy, not to extinguish the claim.

Spotify's Motion seeks to convert nuanced, fact-dependent remedy doctrines into categorical pleading bars. Neither the text of the UCL nor controlling precedent

22

supports that overreach. The Complaint plausibly alleges restitution and injunctive relief expressly authorized by statute.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant Spotify's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).


Dated: March 2, 2026                           BARON & BUDD, P.C.


                                               By:    /s/Mark Pifko
                                                      Mark Pifko

                                               Daniel Alberstone (SBN 105275)
                                               dalberstone@baronbudd.com
                                               Mark Pifko (SBN 228412)
                                               mpifko@baronbudd.com
                                               Peter Klausner (SBN 271902)
                                               pklausner@baronbudd.com
                                               Baron & Budd, P.C.
                                               15910 Ventura Boulevard, Suite 1600
                                               Los Angeles, California 91436
                                               Telephone: (818) 839-2333

PLAINTIFFS' OPPOSITION TO DEFENDANTS SPOTIFY USA INC.'S MOTION TO DISMISS

Anthony Irpino
airpino@irpinolaw.com
Pearl Robertson
probertson@irpinolaw.com
Irpino Law Firm, LLC
2216 Magazine Street
New Orleans, Louisiana 70130
Telephone: (504) 525-1500

*Attorneys for Plaintiff Eric Dwayne
Collins, individually, and on behalf of
other members of the general public
similarly situated*

PLAINTIFFS' OPPOSITION TO DEFENDANTS SPOTIFY USA INC.'S MOTION TO DISMISS

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Eric Dwayne Collins, a/k/a "RBX," certifies that this brief does not exceed 7,000 words, which complies with the word limit of L.R. 11-6.1.


Dated: March 2, 2026                                    BARON & BUDD, P.C.


                                                        By:   */s/Mark Pifko*
                                                              Mark Pifko

PLAINTIFFS' OPPOSITION TO DEFENDANTS SPOTIFY USA INC.'S MOTION TO DISMISS