UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-10525-JLS-JDE                          Date: June 22, 2026
Title:  Eric Dwayne Collins v. Spotify USA, Inc. et al

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

<table>
<tr><td>Kelly Davis</td><td>N/A</td></tr>
<tr><td>Deputy Clerk</td><td>Court Reporter</td></tr>
</table>

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANT:

Not Present                                                      Not Present

**PROCEEDINGS:   (IN CHAMBERS)  ORDER (1) GRANTING MOTION TO DISMISS (Doc. 38), AND (2) DENYING MOTION TO STRIKE AS MOOT (Doc. 39)**

Before the Court is a Motion to Dismiss filed by Defendant Spotify USA, Inc. (Mot., Doc. 38.)  Plaintiff Eric Dwayne Collins opposed, and Defendant replied.  (Opp., Doc. 41; Reply, Doc. 49.)  Having held a hearing on this matter, and for the following reasons, the Court GRANTS Defendant's Motion to Dismiss.

## I.    BACKGROUND

Plaintiff Eric Dwyane Collins is a rapper whose music is available on Spotify, a music streaming platform.  (Compl. ¶¶ 82, 86, Doc. 1.)  As a rights holder[1] of his own music, Plaintiff derives revenue from his music being streamed on Spotify.  (Id. ¶ 86.)  Spotify distributes royalties by allocating to each song a percentage of Spotify's revenue pool, which correlates to the number of streams of the song as compared to the total number of streams of all songs on Spotify.  (Id. ¶ 31.)  Accordingly, Plaintiff alleges that

---

[1] The complaint defines a rights holder as "any individual or entity that owns, controls, or possesses an interest in the intellectual property associated with a musical work or sound recording."  (Id. ¶ 7 n.1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-10525-JLS-JDE                              Date: June 22, 2026
Title:  Eric Dwayne Collins v. Spotify USA, Inc. et al

"[a]ny time a Rights Holder's share of the revenue pool increases due to increased music streams, the shares for other Rights Holders necessarily decrease."  (*Id.* ¶ 32.)

Plaintiff alleges that "[e]very month . . . billions of fraudulent streams are generated from fake, illegitimate and/or illegal methods (e.g., bots)" using Spotify.  (*Id.* ¶ 2.)  Specifically, bots are programmed by third parties to repeatedly stream certain artists' songs, artificially inflating the total number of streams for those artists' works.  (*Id.* ¶¶ 11–12, 45.)  For instance, Plaintiff alleges that bots are able to create a high number of free Spotify accounts, then listen to exclusively one artist's music for nearly all hours of the day.  (*Id.* ¶¶ 66, 74–75.)  The bots may be designed to "mimic human behavior . . . in order to avoid detection," and may use Virtual Private Networks ("VPNs") to obscure location data, hiding the fact that they are streaming from only a limited number of locations.  (*Id.* ¶ 47.)  Spotify recognizes that this practice, which it calls "artificial streaming," can be used to "increase the perceived popularity of [an artist's] music on Spotify," and expressly represents that such practices are prohibited.  (*Id.* ¶¶ 51–52.)

Spotify has stated that it has taken steps to detect and stop artificial streaming, such as "conduct[ing] daily cleaning to ensure artificial streams are removed from public numbers," imposing a minimum stream requirement on each track before it is entitled to revenue to deter artificially streaming a high volume of tracks, and imposing penalties on labels and distributors for "'flagrant' artificial streaming activity."  (*Id.* ¶¶ 52–55.)  Nonetheless, Plaintiff alleges that "Spotify's detection mechanisms and enforcement policies are ineffective, inconsistently applied, and/or insufficient," and that artificial streaming continues to occur.  (*Id.* ¶ 57.)

Because other artists' streams are being artificially inflated, Plaintiff alleges that his "share of Spotify's revenue pool has been unjustly diminished[.]"  (*Id.* ¶ 87.)  On November 2, 2025, Plaintiff filed this putative class action, on behalf of himself and other

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-10525-JLS-JDE                    Date: June 22, 2026
Title:  Eric Dwayne Collins v. Spotify USA, Inc. et al

rights holders whose content was hosted on Spotify, against Defendant Spotify USA, Inc. ("Spotify").[2]  (Compl. ¶ 89.)  Plaintiff brings two claims against Spotify: (1) negligence, and (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*  (*Id.* at 22–25.)

Spotify has filed a motion to dismiss Plaintiff's claims.  (Mot.)

## II.    LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Furthermore, courts must draw all reasonable inferences in the light most favorable to the non-moving party.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 663 (citing *Twombly*, 550 U.S. at 556).

When courts find that a complaint fails to state a claim, they are to "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (indicating that leave to amend is granted with "extreme liberality").  But Rule 15's "liberality does not apply when amendment would be futile."  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016).  A proposed amendment is futile if "no set of facts can be proved under the

---

[2] Defendants Spotify AB and Spotify Technology, S.A. were also named in the complaint but have since been dismissed.  (*See* Doc. 40.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-10525-JLS-JDE                              Date: June 22, 2026
Title:  Eric Dwayne Collins v. Spotify USA, Inc. et al

amendment that would constitute a valid claim or defense." *Abels v. JBC Legal Grp., P.C.*, 229 F.R.D. 152, 157 (N.D. Cal. 2005).

## III.   <u>ANALYSIS</u>

Spotify moves to dismiss Plaintiff's negligence and UCL claims.  The Court addresses each claim in turn.

### A.   **Negligence**

Plaintiff alleges that Spotify breached its duty owed to the class members by "failing to properly address the artificial inflating of streaming," thereby allowing bots to "dishonestly increase the share of the revenue pool for certain artists, to the detriment of the members of the Class."  (Compl. ¶¶ 108, 110.)  Spotify argues that Plaintiff has failed to allege that Spotify owed Plaintiff a duty of care to mitigate third parties' artificial streaming activity on its platform.

"As a general rule," a defendant will have no duty to protect an individual from "the conduct of another."  *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 211 (2021).  However, "[a]n exception to this no-duty-to-protect rule exists for cases in which the defendant has a special relationship with either the dangerous third party or with the victim."  *Id.*  Plaintiff contends that he has sufficiently alleged that Spotify has a special relationship with Plaintiff and similarly situated rights holders, and that Spotify has a special relationship with the third-party bots.[3]  The Court addresses each argument in turn.

---

[3] At oral argument, Plaintiff's counsel briefly mentioned an alternative voluntary undertaking theory of liability.  As this argument was neither raised in Plaintiff's opposition brief nor fleshed out at oral argument, the Court does not address the voluntary undertaking theory.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-10525-JLS-JDE                         Date: June 22, 2026
Title:  Eric Dwayne Collins v. Spotify USA, Inc. et al

### 1.   Special Relationship Between Spotify and Plaintiff

The California Supreme Court has recognized that such special relationships arise between a plaintiff and a defendant when "the relationship has an aspect of dependency in which one party relies to some degree on the other for protection," and when the non-dependent party "has superior control over the means of protection."  *Regents of Univ. of Cal. v. Superior Ct.*, 4 Cal. 5th 607, 620–21 (2018).  Courts also consider whether the special relationship will create a duty owed only to a limited community, and whether the special relationship "especially benefit[s] the party charged with the duty of care," when evaluating whether a special relationship exists.  *See In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 632–33 (N.D. Cal. 2024) (citing *Regents*, 4 Cal. 5th at 621).  Common carrier, innkeeper, landlord/tenant, employer/employee, and school/student relationships have been traditionally recognized as special relationships giving rise to the duty to protect a more vulnerable party from the actions of third parties. *Regents*, 4 Cal. 5th at 620.

Plaintiff argues that a special relationship exists between himself and Spotify because he "had 'a right to expect protection' from Spotify."  (Opp. at 13.)  Plaintiff analogizes to *In re Accellion, Inc. Data Breach Litigation*, which involved a data breach by "unauthorized third parties" of a file transfer software owned by Accellion.  713 F. Supp. 3d at 629.  The plaintiffs were individuals who, while doing business with entities using Accellion, were "*required to provide PII* that is then *transferred* by Accellion[.]" *Id.* at 633 (emphasis in original).  The court concluded that "there exists a special relationship between a file transfer company and the individuals whose information is being transferred," in part because "there is abundant authority that California law recognizes a duty on companies to take reasonable steps to protect all sensitive information it obtains from individuals."  *Id.* at 632, 634.  Relatedly, Plaintiff also analogizes to cases which have found that banks owe a duty to their depositors to handle transactions with reasonable care.  (*See* Opp. at 12–13.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-10525-JLS-JDE                      Date: June 22, 2026
Title:  Eric Dwayne Collins v. Spotify USA, Inc. et al

But this case is distinguishable.  In the cases to which Plaintiff cites, the entities owing a duty to more vulnerable individuals exist in large part to safeguard the sensitive information or assets of those vulnerable individuals.  For example, in *Accellion*, the plaintiffs alleged that the file transfer company assumed a "role as the 'purported expert guardians and gatekeepers of data" and provided a service that "was intended to 'facilitate secure, encrypted file sharing.'"  713 F. Supp. 3d at 629, 631.  The *Accellion* court then concluded that the relationship between the plaintiffs and the file transfer company was a vulnerable one because the plaintiff "relied on Accellion to safeguard the PII that it transferred."  *Id.* at 633.  By contrast, this case does not involve an entity which has assumed the role of protector of any of Plaintiff's information or assets.  Rather, any relationship Plaintiff has with Spotify exists because Plaintiff, or other rights holders of his music, has opted to make his music available on Spotify in exchange for the revenue derived from such music.  As alleged, the Court finds that any such relationship is more aptly characterized as a commercial relationship from which both parties derive economic benefits, rather than a relationship where a platform is expected to protect a vulnerable party like in *Accellion*.

Plaintiff emphasizes that, like the platform in *Accellion*, Spotify has "superior control over the means of protection."  (Opp. at 13 (quoting *Regents*, 4 Cal. 5th at 621).)  Specifically, Plaintiff argues that "Spotify has the 'superior' ability to guard against streaming fraud on its platform and Plaintiff and other class members are in no position to detect or remedy streaming fraud on Spotify's platform," which gives rise to a special relationship between himself and Spotify.  (Opp. at 14.)  However, this is insufficient.  As discussed above, special relationships typically exist "where 'the plaintiff is particularly vulnerable'" as compared to the defendant, *Regents*, 4 Cal. 5th at 621 (citation omitted); the fact that Spotify has the superior ability to protect Plaintiff from one type of economic threat does not automatically transform the parties' commercial relationship into one of vulnerability and dependence.  Indeed, in many mutually beneficial economic

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-10525-JLS-JDE                              Date: June 22, 2026
Title:  Eric Dwayne Collins v. Spotify USA, Inc. et al

relationships, each party will have the unique ability to protect or promote certain financial interests of the other party, and Plaintiff cites to no case, outside of the specific bank-depositor context, in which the ability to protect another party's purely financial interest indicates a level of vulnerability that would give rise to a special relationship.

Moreover, Plaintiff's argument that he can expect protection from Spotify is premised on the notion that Spotify alone has access to streaming data from its platform and can control its platform.  (*See* Opp. at 13–15.)  However, that an online platform will have superior access to information and control over its platform is to be expected, and does not by itself create a special relationship between the platform and those who may be affected by users of the platform.  *See Dyroff v. Ultimate Software Grp., Inc.*, 2017 WL 5665670, at *15 (N.D. Cal. Nov. 26, 2017) (holding that an online platform's superior knowledge and ability to act "does not create a special relationship absent dependency or detrimental reliance by its users").  Rather, in several cases, courts have found that there is no special relationship between such platforms and plaintiffs, nor any duty to protect the plaintiffs from bad actors using the platforms.  *Id.*; *see also Ziencik v. Snap, Inc.*, 2024 WL 6846238, at *3 (C.D. Cal. Jan. 19, 2024).

In sum, in this context, allegations that Spotify possesses the superior ability to control artificial streaming as compared to Plaintiff are insufficient to support the existence of a special relationship, and Plaintiff does not otherwise allege facts showing that he is a vulnerable party.  Accordingly, Court concludes that Plaintiff has failed to allege the existence of a special relationship between Plaintiff and Spotify which would give rise to Spotify's duty to protect Plaintiff against artificial streamers.

### 2.   Special Relationship Between Spotify and Third-Party Bots

Plaintiff additionally argues that Spotify has a special relationship with third-party bots, which gives rise to a duty to protect Plaintiff from those bots.  "[A] special

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-10525-JLS-JDE                                Date: June 22, 2026
Title:  Eric Dwayne Collins v. Spotify USA, Inc. et al

relationship between the defendant and the dangerous third party is one that 'entails an ability to control [the third party's] conduct.'"  *Brown*, 11 Cal. 5th at 216 (quoting *Regents*, 4 Cal. 5th at 619).  "The parent-child relationship is an example of a special relationship giving rise to a duty to control."  *Regents*, 4 Cal. 5th at 619.  In *Brown*, the California Court of Appeal found that a special relationship existed between the defendant, which was the governing body of taekwondo and "responsible for the conduct and administration of taekwondo in the United States," and a taekwondo coach who sexually abused young athletes, in part because the defendant "registered [the individual] as a coach" and "had control over [his] conduct through its policies and procedures." *Brown v. USA Taekwondo*, 40 Cal. App. 5th 1077, 1094–95 (2019), *as modified on denial of reh'g* (Nov. 6, 2019), *aff'd,* 11 Cal. 5th 204 (2021).

Plaintiff has failed to allege that Spotify has control over the bots' conduct. Spotify's relationship with the bots does not resemble a parent/child relationship, or that of a governing taekwondo body and the coach it registered.  Rather, as alleged, Spotify is a platform that allows users to create accounts and stream music.  Although Spotify has taken efforts to detect and mitigate artificial streaming by bots, such efforts do not suggest that Spotify has assumed a position of control over any of its third-party users of the platform, including the bots.  *See Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1008 (C.D. Cal. 2022) (finding no special relationship where the complaint alleged, "[a]t most," that the defendant "provides a platform for renting and sets policies for rentals").

Because Plaintiff has failed to allege the existence of a special relationship between Spotify and the third-party bots, and also has failed to allege the existence of a special relationship between Spotify and rights holders like himself, Plaintiff has failed to allege that Spotify has a duty to protect him from the effect of artificial streaming. Accordingly, Plaintiff's negligence claim is DISMISSED WITH LEAVE TO AMEND.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-10525-JLS-JDE                                   Date: June 22, 2026
Title:  Eric Dwayne Collins v. Spotify USA, Inc. et al

### B.   UCL

Plaintiff brings his second claim pursuant to the fraudulent and unfair prongs of the UCL.  Spotify contends that Plaintiff's claim fails under both prongs.

### 1.   Fraudulent Prong

First, Plaintiff alleges that Spotify violated the UCL's fraudulent prong because "Spotify repeatedly and dishonestly represented that it would detect, prevent, and remedy streaming fraud on its platform.  But Spotify never made good on these representations." (Compl. ¶ 116.)  Specifically, in Opposition, Plaintiff identifies the following representations: (1) Spotify's statement that it intends to "protect and strengthen the integrity of its music royalty ecosystem," and (2) Spotify's claim that it "put[s] significant engineering resources and research into detecting, mitigating, and removing artificial streaming activity on Spotify," including by "conduct[ing] daily cleaning to ensure artificial streams are removed from public numbers in the Spotify app."  (Opp. at 20–21; Compl. ¶ 52.)  However, Plaintiff has failed to allege how such representations are false or misleading.  *See Goldsmith v. Allergan, Inc.*, 2011 WL 2909313, at *4 (C.D. Cal. May 25, 2011) ("The UCL [bars statements] that [are] likely to mislead or deceive[.]").  Plaintiff alleges only that "Spotify's detection mechanisms and enforcement policies are ineffective," (Compl. ¶ 57), but such an allegation has no bearing on the falsity of Spotify's representations about the "resources" it devotes to mitigating artificial streaming.

Moreover, the complaint contains no allegations to show Plaintiff's actual reliance on Spotify's purported misrepresentations.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009) ("[W]e conclude that a plaintiff must plead and prove actual reliance [in UCL fraud actions].").  In Opposition, Plaintiff emphasizes that he alleges, "Had Plaintiff and members of the Class known that Defendants were engaging in this wrongful conduct,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-10525-JLS-JDE                              Date: June 22, 2026
Title:  Eric Dwayne Collins v. Spotify USA, Inc. et al

they would have taken actions likely resulting in an end to the scheme, as well as some form of restitution." (Opp. at 22; Compl. ¶ 120.)  But such allegations are vague, and fail to identify with particularity how Plaintiff changed his position as a result of Spotify's purported misrepresentations. *See* Fed. R. Civ. P. 9(b).  The Court therefore concludes that Plaintiff has failed to state a claim under the fraudulent prong of the UCL.

> 2.      **Unfair Prong**

Under the UCL, "a practice may be deemed unfair even if not specifically proscribed by some other law." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Plaintiff alleges that Spotify's conduct is unfair because it "offends public policy and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers," and that "[a]ny justification for Defendants' practices is outweighed by the consequences and harm to Plaintiff and the Class." (Compl. ¶ 118.)

But Plaintiff has failed to plead facts to support these contentions.  First, Plaintiff's complaint recognizes that "Bot Vendors," which are "specialized tech and software companies," "typically design Bots to mimic human behavior . . . in order to avoid detection." (*Id.* ¶¶ 46–47.)  Plaintiff's complaint further recognizes that Spotify nevertheless *has* taken steps to deter bots, such as "conduct[ing] daily cleaning to ensure artificial streams are removed from public numbers," imposing a minimum stream requirement on each track before it is entitled to revenue to deter artificially streaming a high volume of tracks, and imposing penalties on labels and distributors for "'flagrant' artificial streaming activity." (*Id.* ¶¶ 52–55.)  Although Plaintiff alleges that Spotify should be doing more, Plaintiff does not identify the degree of financial impact artificial streaming has on artists like Plaintiff.  Plaintiff's complaint focuses almost exclusively on the artificial streams of only one artist's music, (*see id.* ¶¶ 59–71), so the extent to which Plaintiff is injured by artificial streaming as a whole is unclear.  Accordingly, Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-10525-JLS-JDE                    Date: June 22, 2026
Title:  Eric Dwayne Collins v. Spotify USA, Inc. et al

has failed to plausibly allege that the harm he has suffered outweighs any justification Spotify may have for maintaining its current policies regarding artificial streaming, or that Spotify's conduct has substantially injured him.  Plaintiff has therefore failed to state a claim under the unfair prong of the UCL.

The Court therefore DISMISSES Plaintiff's UCL claim WITH LEAVE TO AMEND.

## IV.   <u>CONCLUSION</u>

For the above reasons, Defendant's Motion is GRANTED.  Plaintiff's negligence and UCL claims are DISMISSED.  Plaintiff is GRANTED LEAVE TO AMEND the pleading, correcting the deficiencies identified herein in a manner consistent with all Rule 11 obligations.  Plaintiff may not add claims or new defendants to his pleading.  Any amended complaint shall be filed within **twenty-one (21) days** of the date of this Order.  Failure to timely file an amended complaint will result in the dismissal of this action and closing of the case without further notice.

Because the Court has dismissed Plaintiff's claims, Defendant's motion to strike is DENIED AS MOOT.

Initials of Deputy Clerk: kd